THE BANK OF THE STATE OF INDIANA v. ANDERSON *et al.*

1. TRANSFER OF NOTES SECURED BY MORTGAGE. The transfer of notes secured by a mortgage carries with it as an equitable incident, the mortgage, and the assignor, the assignee and the mortgagor will be charged with notice of the same. The same rule does not apply to third parties who have no actual notice, and could not acquire it by the exercise of diligence; but the assignee may notify third parties by having his assignment duly acknowledged and recorded: LOWE, J., *dissenting*.

2. SAME. When A mortgaged real estate to M, to secure negotiable notes, which notes were sold and transferred to the Bank of the State of Indiana, without an assignment on the mortgage; after which A paid the amount of the notes to M by a conveyance of the mortgaged property, at which time M, in his own name entered a satisfaction of the mortgage upon the record; subsequently to all of which M borrowed money of the Artisans' Bank of New York, and secured the same by a mortgage on the same property, the mortgagee having, before receiving the mortgage, had the title examined by a competent attorney, who reported the same clear of all incumbrances; and when it was shown that the Bank of the State of Indiana neither consented to nor had any knowledge of the satisfaction of said mortgage, and that the Artisans' Bank acted in good faith, and without knowledge that the original mortgage had not been paid to the proper party: It was *held*, That the Artisans' Bank had the superior equity: LOWE, J., *dissenting*.

*Appeal from Dubuque City Court.*

WEDNESDAY, APRIL 15.

ANDERSON mortgaged his real estate to Mobley, to secure certain negotiable notes. Before these notes were due, Mobley sold and transferred them to plaintiff, but did not assign the mortgage. After this Anderson paid these notes to Mobley, by conveying to him the mortgaged property, whereupon Mobley in his own name, satisfied, by proper writing upon the margin of the record, the said incumbrance.

Subsequently Mobley borrowed money of the "Artisans' Bank of New York," and secured the same by mortgage on the same premises. Before taking this security the said bank had the title examined by a competent attorney, who reported the same clear of all incumbrances. The Indiana Bank gave no consent to the satisfaction of said mortgage, nor had knowledge of it. The Artisans' Bank acted in good faith, and had no notice that the original mortgage had not been paid to the proper person.

The second mortgage was foreclosed in 1861, but the plaintiff was not made a party to the proceeding. After the Artisans' Bank had purchased the property under this foreclosure, plaintiff brought this suit to foreclose the Anderson mortgage, which was accordingly ordered, from which the Artisans' Bank appeal.

*Bissell & Shiras* for the appellant.

1. Although the transfer of the debt secured by a mortgage carries the mortgage security with it, still it does not carry the legal title to the security. It is only through a court of equity that the security can be made available. *Parsons* v. *Wells*, 17 Mass., 425; *Anderson* v. *Baumgartner*, 27 Mis., 87; *Patch* v. *King*, 29 Me., 451; *Lyford* v. *Ross*, 33 Id., 197; *Dwinals* v. *Pexley*, 32 Id., 197.

VOL. XIV.—69

2. Although the debt, secured by mortgage, is a negotiable note, the mortgage does not thereby become negotiable. It is merely assignable, and is subject to all the equities of the mortgagor, arising before the notice of the transfer of the debt or mortgage. If the assignee of the debt wishes to protect himself against any equities, arising after the transfer, he must give notice of the assignment to the mortgagor.

The mortgagor has a right to deal with the mortgagee as the real owner of the mortgage, until he has received notice of the transfer of the debt or mortgage. *James* v. *Johnson*, 6 John. Ch., 427; *The New York Life and Trust Company* v. *Smith*, 2 Barb. Ch., 82; *Stuyvesant* v. *Howe et al.*, 1 Sand. Ch., 419; *James* v. *Morey*, 2 Cow., 288.

3. After Mobley had assigned the notes to plaintiff, *as between them*, Mobley was the trustee for plaintiff, and held the mortgage for plaintiff's use, but as to all other persons, without notice, he was still the mortgagee, having full authority to control the mortgage. *Person* v. *Wells et al.*, *supra*; *Roberts* v. *Halstead*, 9 Barr., 25; *Brown* v. *Sampson*, 2 Watts, 233; *Stone* v. *Locke*, 46 Me., 448.

4. The mortgage may be discharged separate from the debt, and the debt may be assigned separate from the mortgage, and until the mortgagor has had notice, that the mortgage has been transferred, he may deal with the mortgagee as the owner, and any contract made between them, will bind all holding under them. It is only when the mortgagor had notice of the transfer of the mortgage, that a contract between him and the mortgagee will be declared fraudulent and void. See *Patch* v. *King*, 29 Me., 452; *James* v. *Johnson*, *supra*; *Mills* v. *Comstock*, 5 John. Ch., 214.

5. The registry acts have been enacted for the purpose of enabling all persons to ascertain the title to real estate; and purchasers, or incumbrancers of real estate, are not

required to·look beyond the public records to determine who is the owner of any particular piece of real estate. Although, if a person has actual notice, not apparent of record, he is bound by it as much as though it appeared of record. *Stone* v. *Locke, supra;* Rev., 1860, §§ 2220, 3670; *Fassett* v. *Smith*, 23 N. Y., 253.

6. Mobley, the mortgagee, or some person duly authorrized as his attorney or 'agent, were the only persons who could enter satisfaction on the record. If the transfer of the debt operates as a legal transfer of the mortgage, then to make it of any validity, as to third parties acquiring rights· subsequent thereto, it must be acknowledged and recorded. If it does not operate as a transfer of an interest in the real estate, then the mortgagee retains the right to enter satisfaction. *Swarthout* v. *Curtis*, 1 Seld., 308; *Smith* v. *Kelley*, 27 Me., 237; *Seevers* v. *Delashmutt*, 11 Iowa, 176; *Porter* v. *Greene*, 4 Id., 571; *Stone* v. *Locke, supra*.

7. The satisfaction entered on the record by Mobley was a full and final discharge of the property from the mortgage, and third parties acquiring a right in the property after such discharge will hold against the assignee of notes secured by the first mortgage. *Patch* v. *King, supra; Fassett* v. *Smith, supra*.

8. The Artisans' Bank is an innocent purchaser without notice, having advanced its money, taken the mortgage,. foreclosed the same, and purchased the property and received a title from· the sheriff, before any notice of the claim of the plaintiff.

9. The debt secured by the mortgage from Anderson to Mobley was past due, when it was satisfied of record, and no demand of the same had been made upon him, nor had any notice of the assignment been. given to him; nor was any notice given him, nor demand made, for more than three years after the whole debt was due. If plaintiff ever had any rights against the Artisans' Bank, they·have been

neglected, so that they are not entitled to the protection of a court of equity. *Anderson* v. *Baumgartner, supra ; Waldron* v. *Sloper,* 19 E. L. & E., 115.

10. Although a mortgage may be revived as against the mortgagor, when it has been improperly, or fraudulently canceled; this cannot be done so as to affect persons whose rights have intervened after such cancellation. *Barnes* v. *Carmack,* 1 Barb., 392; *Fassett* v. *Smith, supra.*

*Samuels, Allison & Crane* for the appellee.

The counsel for the appellee in reply to the argument of the counsel for the appellants, as to the first point, cited *Crow, McCreary & Co.* v. *Vance,* 4 Iowa, 441, and the authorities there cited: to the second point, *James* v. *Morey,* 2 Cow., 297; *Fisher* v. *Otis,* 3 Chand. (Wis.), 83; *Martineau* v. *McCollum,* 4 Id., 153; *Brown* v. *Blydenburgh,* 3 Seld., 141; *Reeves* v. *Scully,* Walk. Ch., 248; *Mott* v. *Clark,* 9 Penn. S. R.: to the fifth point, *Runyan* v. *Mersereau,* 11 John., 534; *Jackson* v. *Bronson,* 19 Id., 325; *Green* v. *Hart,* 1 Id., 591; *Johnson* v. *Hart,* 3 John. C., 327; 3 Barb., 312; *Southerine* v. *Muduno,* 5 N. H., 432; *Jackson* v. *Blodgett,* 5 Cow., 202; *Waring* v. *Smyth,* 2 Barb. Ch., 312; *Pope & Slocum* v. *Jacobus,* 10 Iowa, 262; *Sangster* v. *Love et al.,* 11 Id., 580; *Ragland* v. *The Justices, &c.,* 10 Ga., 65; *Kisma* v. *Smith,* 36 N. H., 39 and 158; 3 Miss., 581; 2 Green Ch., 14; *Whitney* v. *French,* 25 Verm., 663; 2 Gall., 155; *Regney* v. *Lovejoy,* 13 N. H., 247; *Burdett* v. *Clay,* 8 B. Monr., 294; *Dick* v. *Mawry,* 9 S. & M., 448; *Henderson* v. *Herrod,* 10 Id., 633; *Wilson* v. *Kimball,* 7 Foster, 305; *Craft* v. *Webster,* 4 Rawle, 242; *Mott* v. *Clark,* 9 Barr, 401: to the sixth, *Swarthout* v. *Curtis,* 1 Seld., 308; *Farmers' Loan and Trust Company* v. *Walworth,* 1 Com., 443: to the seventh point, 1 Hilliard, 517, § 35; *McCormick* v. *Digby,* 8 Blackf., 99; *Roberts* v. *Halstead,* 9 Barr., 25.

The counsel for the appellee also presented the following additional points and authorities:

I. By the foreclosure of the mortgage and the purchase of the premises in dispute, the Artisans' Bank did not in any degree improve or strengthen its right, as against the plaintiff. The plaintiff not being a party to the foreclosure proceeding was neither bound nor prejudiced by it. *Veach* v. *Schaup et al.*, 3 Iowa, 194; 1 Hill Mort., 667, § 15; *Laylor* v. *Thomas*, 1 Halst. Ch., 331; *Harris* v. *Norton*, 16 Barb., 264.

II. The indorsement and delivery of the notes to the plaintiff carried with them the mortgage given to secure their payment, as an incident of the debt, and gave to the plaintiff all the rights of Mobley at the time. *Crow, Mc-Crary & Co.* v. *Vance*, 4 Iowa, 441; *Green* v. *Hart*, 1 John., 590.

III. The plaintiff was a *bona fide* holder of the notes, having advanced his money upon the strength of holding them as collateral security. *Roxborough* v. *Messick et al.*, 6 Ohio State, 448.

IV. The indorsement of the Anderson mortgage by Mobley after the indorsement of the notes to plaintiff, being made without the knowledge or consent of the plaintiff, was void and of no effect. After the indorsement of the notes, Mobley had no power, by any act of his own, to prejudice the rights of the plaintiff. *The Farmers' Loan and Trust Company* v. *Walworth*, 1 Com., 433; *Pratt* v. *The Bank of Bennington*, 10 Verm., 293; 1 Hill Mort., § 88 a; *Trenton Banking Company* v. *Woodruff*, 1 Green Ch., 125; *Lilly* v. *Quick*, 1 Id., 97; *Miller* v. *Wick*, 1 Saxton (N. J.), 214; *Robinson* v. *Sampson*, 23 Me., 391; *Heighway* v. *Pendleton*, 15 Ohio, 735; *King* v. *McVickar*, 3 Sand. Ch., 192; *Brown* v. *Blydenburgh*, 3 Seld., 141; *Hart* v. *Webb*, 36 N. H., 164; *Blake* v. *Williams*, Id., 40; *Valle* v. *The American Iron Company*, 27 Mo., 462.

V. The assignment of a mortgage is valid though not in writing. *Crow, McCreary & Co.* v. *Vance, supra.* A parol assignment being valid and binding, it follows that no registration of the assignment is necessary in order to protect the rights of assignee. The transfer of the note and mortgage even in writing is not an "instrument affecting real" estate, and therefore is not controlled in any manner by the registration laws of this State. The mortgage itself is an instrument affecting real estate, because it creates a lien thereon, and gives the mortgagee a right to have it appropriated to the payment of his claim. The transfer or assignment of the mortgagee's right to another party, whether in writing or by parol, does not in any manner affect the land mortgaged, but simply operates a change from one party to another of the right to appropriate the real estate by suit or otherwise to the discharge of the debt. Code, § 2220. The laws of Iowa neither require nor authorize the registration of the assignment of mortgages. If the plaintiff had taken a written assignment and placed it upon record, it would not have benefited him any, as it would not have been notice to any one. *James* v. *Morey*, 2 Cow., 296; *Rud* v. *Marble*, 10 Paige, 409; *Wolcott* v. *Sullivan*, 1 Ed. Ch., 399.

WRIGHT, J.— The question to be determined is, which mortgage is the prior lien upon the property. Both parties claim to be innocent, and we are to settle their respective rights upon general principles and such aid as we can derive from the provisions of our Statute.

The transfer of the note to plaintiff carried with it as an equitable incident, the mortgage given to secure the same. That this is true as between the immediate parties to the transfer, there is no controversy. But a pertinent inquiry is, whether this is equally true as to third persons who had no notice of it, to the extent that they were bound to know

that the original mortgagee ceased to have the right to cancel or discharge the mortgage. The security passes to the assignee or holder of the notes, as an incident, and upon the principle that the party holding the debt has a right to that which was given to secure it. But is the theory just or tenable which compels a third person to take notice of such transfer, and of the equitable consequences following. Now, as stated above, the mortgagee or payee may be barred by it. And so there is no hardship or injustice in requiring the mortgagor to take notice of it if he proposes to satisfy his debt, for he has a right, and the exercise of a proper diligence demands, that he should exact the production of the notes before paying the same. But by what process of reasoning can this principle, or this line of argument, be urged against a third party, who in utter ignorance of the facts, and of facts too which he could not ascertain by the use of even extraordinary diligence, takes an incumbrance upon property which is apparently freed from the prior lien? We confess our inability to see its applicability or pertinency.

It is perhaps suggested that the second mortgagee should apply to the mortgagor to ascertain the facts. Suppose he does and he confirms, what is apparently true by the entry upon the record, is he then protected? If so then he derives an advantage from that which only corroborates the falsehood (but apparent truth) of the record. If not then where else can he go? Is he to give notice that he is about to take a lien upon the property, and that all the world must speak or afterwards be concluded. Or is he to forbear making this investment because, perchance, some person may have been guilty of a fraud, a fact of which there is not a single circumstance to create even a suspicion. It seems to us that to require such inquiry or diligence is to reverse all the well-settled rules, and to impose a duty upon him not

recognized by any of the cases, and certainly not in consonance with reason.

But, on the other hand, how easy it is for the assignee of the notes or debt thus secured to protect himself. He can, by having the mortgage assigned on the margin of the record, protect himself against all possible fraud on the part -of the mortgagee, and leave the evidence of his rights in such a condition as that it must inevitably be seen by any one looking for incumbrances. Or if not thus, he may take his assignment in the ordinary form; have it duly acknowledged and recorded, and thus give notice of his interest in the security to third persons. Whether this would operate as constructive notice under the Statute, we shall examine hereafter. We only refer to it now to show that there is a more plausible, tangible method for the assignee to protect himself than is given the subsequent mortgagee, who acts upon the validity of a satisfaction entered by the only party apparently authorized to make it.

But let us come to the actual facts and see how the case stands. The subsequent mortgagee took the precaution to have the records examined, and found that the first mortgage was canceled or satisfied by the proper entry on the margin of the record, signed by the genuine signature of the mortgagee. The record contained no evidence that any other person had any interest in the security or ever had. It is not a case of forgery, but, at the most, a fraud practised by the mortgagee upon the holders of the debt. They, by failing to take the proper transfer, had, in equity at least, continued the mortgagee as the trustee holding the lien for them. But as to third persons without notice, he still held it for himself. Now, suppose these beneficiaries had been induced by actual fraud to consent to such satisfaction, would it be claimed that they could, by afterwards showing that fact and procuring the cancellation of such entry of satisfaction, acquire priority over an intervening

innocent incumbrancer? It seems to us most clearly not, and that the case is no different when a fraud has been practised by the legal, apparent record owner of the mortgage, which results in an injury of one of two innocent parties. And when it is remembered that Mobley, at the time he executed the second mortgage, had not only satisfied the first one, but then held the legal title by an absolute deed from Anderson, it would seem to us, in the language of the Chancellor, in *James* v. *Johnson*, 6 John. Ch., 417, "unreasonable and inequitable to snatch this security from the defendant, who has bestowed all requisite vigilance, and placed confidence where he had a right to place it, and where the common sense and usages of mankind would have placed it, in the ostensible owner, claiming to be the owner," and showing in himself all title, legal and equitable. And though this case was reversed upon some points in the Court of Errors (2 Cowen, 246), it is only necessary to say, that, in the case before us, the subsequent mortgagee did not deal with Mobley without requiring the first mortgage to be canceled. If this had been the case, appellant would truly be here without the semblance of equity, to claim that the prior *bona fide* assignee shall be postponed. Not so, however, where the cancellation has been made, and where the party has dealt with the mortgagee without notice of the assignment. *Williams* v. *Sewell*, 4 Vesey, 389.

The case of *Pratt* v. *Bank of Bennington*, 10 Verm., 293, much relied upon by appellee's counsel, differs from this, in the important particular, that there the mortgage had not been canceled on the record. It is undoubtedly true, that where an estate is mortgaged and the mortgagee assigns the mortgage to a third person, and subsequently takes a deed from the mortgagor, the mortgage title does not merge in the fee, for there can be no merger unless the two estates unite in one and the same person. *White* v.

*Hampton,* 13 Iowa, 259. Nor is the recording of the assignment of a mortgage necessary to its foreclosure in equity, for the incident follows the debt, and as the debt may be assigned by parol, so may the mortgage. But the question would still remain, whether a subsequent mortgagee is bound to take notice of such transfer after there has been a satisfaction of record.

It may be conceded that there is some conflict of authority upon the question thus presented.. We refer to a few of the many favoring the views above expressed.

In *Roberts* v. *Halstead,* 9 Barr, 32, the *terre tenants* purchased the land after the registry of the mortgage, and *before* satisfaction entered. In considering it, BELL, J., says: " Had there been a *bona fide* purchaser of the mortgaged premises *after* the entry of the satisfaction, and without notice of the outstanding notes, or, as was the case in *Brown* v. *Simpson,* 2 N. H., 233, were the attending circumstances such as led nobody to lean to the conclusion that the mortgage moneys had not been paid, a countervailing equity would have sprung up for the protection of the innocent purchaser."

In *Barnes* v. *Carnack,* 1 Barb., 392, Barnes, the second mortgagee, took his security while the first mortgage was subsisting and prior to its cancellation, procured by the fraud of the mortgagor. The first mortgagee was restored to his rights upon the ground that his mortgage was on record, and the second mortgagee had actual notice of it, at the time his was executed ; that he had not loaned his money on the faith or strength of the cancellation, but long before that time. But the rule is clearly recognized, that if the legal rights of parties have been changed by mistake or fraud, equity will not restore them to their former condition, where it will interfere with new rights acquired upon the strength of the altered condition of the

legal right, or where it would work manifest injustice to third persons.

In *Patch* v. *King*, 29 Maine, 448, the proposition is recognized, that the entry made upon the margin of the record, unsupported by other proof, is sufficient to show payment of the debt.

The vice-chancellor, in *Waldron* v. *Sloper*, 19 Eng. L. & E., 111, states the elementary principle, that a party coming into a court of equity, is bound to show that he has not been guilty of such negligence as to enable another party so to deal with that which was the plaintiff's right as to induce an innocent party to assume that he was dealing with his own.

The case of *Fassett* v. *Smith*, 23 N. Y., 252, is a strong one to show that if the cancellation of the first mortgage was obtained by the fraud of the mortgagee, it could not be restored so as to affect the rights of a mortgagee, who, after such cancellation, advanced his money upon the faith of it, and that the right to re-establish the first mortgage was in equity merely, and could not be asserted against a *bona fide* purchaser or mortgagee. And see, also, *Parsons* v. *Wells*, 19 Mass, 419; *Starr* v. *Locke*, 46 Maine, 448, 5 Mich., 98.

But, again, a mortgagee is a purchaser within the meaning of our recording acts. *Porter* v. *Green*, 4 Iowa, 571; *Seevers* v. *Delashmutt*, 11 Id., 176. Under this law, therefore, appellants are purchasers. An instrument affecting this estate is, therefore, invalid as against them, until it is recorded. And, by "real estate," is meant "all *rights thereto and interests therein*, equitable as well as legal." Rev., § 29, ch. 8. The statute has thus given a general rule, and, unlike those of many of the states, has not undertaken to prescribe special regulations for the different instruments affecting real property. Some of the states, for instance, after providing a general. law upon the subject of mort-

gages and conveyances, expressly require assignments of mortgages to be recorded. Our law, by using general terms, well defined and understood, obviates the necessity of more specific legislation. And, in view of this legislation, why should the assignee of a mortgagee be exempt from the duty of placing upon record that which evidences his title to the "right or interest" thus purchased. He need not do it for the perfection of his right as against his assignor or vendor; but for his own protection against third persons the necessity arises. If A takes a deed of the fee from C, the subsequent recording of a prior deed from C to B cannot affect A, who bought for a valuable consideration without notice. And this, because A has the assurance of the law that he may rely upon the record, because he has a right to place confidence in and appeal to it for his protection. Is there any good reason why he may not rely upon that same record when he takes a mortgage? If not, what security is there for any man? A secret or clandestine assignment, whether by parol or upon the instrument itself, or by the transfer of the debt, and however honest the purpose, is liable, as against third persons, to untold abuse. They ought, therefore, to be made a matter of record. The spirit, if not the very letter of our recording law, requires it. Such a requirement can work no possible hardship, while the contrary rule can only be attended with evil, and that continually. Parties should not be permitted to leave their rights and interests in liens and real estate in such a condition as to injure those who are deceived by appearances, without a record notice to guide them. Let the judgment be

Reversed.

Lowe, J., *dissenting.*—I dissent from the foregoing opinion as failing, in my judgment, to reflect the law of the case. It is, confessedly, one of hardship and delicacy,

because the facts show that both parties were alike innocent and *bona fide* lien holders, and that one or the other must sustain, in all probability, a loss. The record discloses no fact that either impairs or displaces the equities of the plaintiff. It does not appear that he either did an act or omitted to do an act required by any rule of the law merchant or the statutes of this State, which could legitimately have the effect to postpone his lien to that of the Artisans' Bank.

When the plaintiff became the owner by assignment of Anderson's notes, the mortgage given to secure the same, by operation of law, and without any additional formal act, followed it as an incident, and he became also the owner of it, in the same sense, and to the same extent, that he did the notes. At that time there was no other rival claim or incumbrance upon the property. His ownership was complete, and the *bona fides* of his security undisputed. Has he forfeited his character as an innocent purchaser and assignee? How? It is submitted he has done nothing himself or omitted to do anything that in law or equity can have this effect. It is true, without his consent, knowledge or procurement, that an intermeddler attempted to destroy the mortgage security by discharging the same of record without the slightest authority. This attempt being an acknowledged fraud, the act, so far as it affected the rights of the plaintiff, was wholly void; or if it had any significance whatever, it was to change his relation of assignor to the plaintiff to that of mortgagor, by taking to himself all the right, title and interest legal and equitable which Anderson had in the premises.

That the plaintiff failed to have the mortgage assigned in writing upon the margin of the record where the same was recorded, is entitled to no serious thought, for the reason no such formality is legally required at his hands in order to preserve intact his equities. Nor was he bound

by any provision of law or prevailing custom to have had the assignment of the mortgage acknowledged and recorded, in order to guard against the fraud of the assignor, or protect himself against the subsequently acquired rights of third persons. Such an act would be wholly inefficacious for the purpose of notice. This has been frequently ruled by the courts. The recording acts of Pennsylvania are quite as broad and comprehensive as ours, requiring *all instruments affecting real estate* to be registered. Yet it was held in the case of *Mott* v. *Clark*, 9 Barr, 401, that the assignee of a mortgage is not bound under the recording acts to register his assignment.

The same was held in the case of *Pratt et al.* v. *The Bank of Pennington et al.,* 10 Ver., 293. This case was in some respects similar in its facts to the one at bar and determined in favor of the assignee, against a subsequent purchaser who had no notice of the assignment.

In the case of *James* v. *Morey*, 2 Cow., 288, WOOD-WORTH, J., remarked, "that the principle is well settled, that when an assignment of a mortgage takes place, without the privity of the mortgagor, the assignee takes, subject to the account between the mortgagor and mortgagee, and that payments to the mortgagee after assignment without notice, must be allowed by the assignee," but further remarks: "I apprehend this is all the risk the assignee incurs. I have not met with any case that places the rights of the assignee on other or different grounds, or that gives countenance to the suggestion that the assignee must, at his peril, give notice to a subsequent assignee or purchaser from the mortgagee. Such a doctrine is not only most unreasonable in itself, but would shake the foundations of security by mortgage assignment, hitherto deemed equal to that of the original mortgage." * * * " When the mortgagee makes a second assignment, the assignee knows that a prior assignment may have been made, and conse-

quently must, as to that fact, repose on the responsibility and integrity of his assignor. If he should be deceived, it is more equitable that he should suffer than to divest the right of the first assignee."

And all this for the plain reason, that the law will not intend that to be known, for the existence of which there is no legal necessity. No presumption can be indulged, that if the assignment had been recorded, the defendant would have become apprised of the fact. We are not to suppose that he would examine the records, unless he was bound to do so in law. The question, therefore, is not what the plaintiff might have done in this case to apprise subsequent grantees or mortgagees that he was himself an incumbrancer, but what he was bound in law to do in order to preserve the priority of his lien against junior claims. It is claimed that it was in his power to have prevented the fraud committed by Mobley, or rather to have protected subsequent grantees or lien-holders, by putting his assignment upon record, and having failed to do this, his rights should be postponed to those of the defendant. It is true he could have done so, but he was under no greater moral or legal obligation to do so than the defendant was, when he found the Anderson mortgage satisfied, to have inquired of Anderson whether said mortgage had not been transferred before satisfaction, and whether he had taken up his notes and paid the debt. If he had observed this prudence, the probability is he would have suffered no loss. Still no laches in law is imputed to him for the omission; and the two banks should be regarded as equally innocent and *bona fide* mortgagees, and in this attitude of the case, without indulging in further comment upon other phases of the case, I will state briefly what I conceive to be the law applicable to the facts of this case.

I. A mortgage, under the laws of this State, is simply a lien or security without (if it is upon real estate) convey-

ing to the mortgagee the legal title, usufruct, or possession until after default, foreclosure and sale.

II. That the notes of Anderson, indorsed by Mobley to the plaintiff in this case, carried with them, as appurtenant thereto, the mortgage given to secure the same, by which act Mobley parted with all right to, or control over, said notes and mortgage, until he paid the debt for which he had given them in pledge.

III. That a cancellation and discharge of the mortgage by the assignor after its transfer and before the payment of said debt, was a fraud in law upon the assignee, and his rights as such were as wholly unaffected thereby as if the same thing had been done by some intermeddling stranger.

IV. That when two parties equally innocent and *bonâ fide*, have each acquired a mortgage lien to the same property, equity, as a general rule, will recognize no preference, but will order their claims to be alike paid according to their respective priority of date, that is to say, a prior lien will give a prior claim which is entitled to prior satisfaction out of the fund upon which it attaches, unless such a lien be intrinsically defective, or be displaced by some act of the party holding the same, which may operate in a court of law or equity to postpone his right to that of a subsequent claimant. *Rankin* v. *Scott*, 12 Wheat. R. (U. S.), 179; Brown's Legal Maxims, 264, and authorities there cited.

The facts of this case do not show that the plaintiff's right of priority, under the above maxim, has been forfeited or impaired by any act of omission or commission on his part, and therefore the judgment rendered in his favor below should be affirmed.