## Virginius A. Turpin, Receiver, etc.,

## v.

## David Ogle.

1. Statement—Mortgage—Fraudulent release.—R. sold to A. certain lands, taking the notes of A., and a mortgage of the premises, to secure the deferred payments. The notes and mortgage were afterwards assigned to O., for a valuable consideration, but the assignment was not put upon record. After this assignment, and before the notes had matured, R. procured a quit-claim deed from A. of the lands, releasing A.'s right of redemption, and made application to appellant's bank for a loan upon the premises. Pending the negotiations for such loan, R., without the knowledge of O., assignee of the notes, and in fraud of his rights, released the mortgage from A. to him and placed such release upon record. The notes were not in fact paid. Thereupon, the title appearing good of record, the bank made the required loan to R., and took as security a trust deed upon the lands aforesaid.

2. Subsequent mortgagee in good faith protected.—In an action by O. to have the release of the mortgage set aside and the trust deed held by the bank postponed to his lien as assignee of such mortgage, held, that the bank being an innocent mortgagee for a valuable consideration, upon the faith of a record showing good title in the mortgagor, and without actual notice of the assignment, was entitled to protection.

3. Assignment of mortgage should be recorded.—The registry laws of this State contemplate the recording of assignments of mortgages, as well as other instruments relating to real estate, and it was the duty of the assignee of the mortgage, if he would protect himself against subsequent mortgages and purchasers, to have caused his assignment to be placed upon record.

4. Notice—Presumption.—A purchaser of lands is presumed not to have notice of an unrecorded interest therein, and the notice to such purchaser that would protect the holder of such unrecorded interest, must be of such a character as to take the place of registry; it must be more than barely sufficient to put him on inquiry.

Error to the Superior Court of Cook county; the Hon. S. M. Moore, Judge, presiding. Opinion filed December 8, 1879, as of May 30, 1879.

Messrs. Hitchcock, Dupee & Judah, for plaintiff in error; that a deed not having the name of a grantee when it was executed and acknowledged is invalid, cited Chase v. Palmer, 29 Ill. 306; Wilson v. South Park Com'rs, 70 Ill. 46.

Assignments of mortgages should be recorded: Rev. Stat. Ch. 30, § 20; Edgerton v. Young, 43 Ill. 464; Cornog v. Fuller, 30 Iowa, 212; Executors of Schwartz v. Leist, 13 Ohio St. 419; Fisher v. Knox, 1 Harris, 622.

By the endorsement and delivery of the notes, defendant in error acquired the legal title to them, but his title to the mortgage security is purely equitable, and must be · determined upon equitable principles, with a due regard to the equitable rights of others: Old v. Cummings, 31 Ill. 188; Walker v. Dement, 42 Ill. 272; Kleeman v. Frisbie, 63 Ill. 482; White v. Sutherland, 64 Ill. 181; Thompson v. Shoemaker, 68 Ill. 256.

Where the equities are equal, the law must prevail, and plaintiff in error having the legal title, and being in possession, is entitled to protection: 1 Story's Eq. Jur. § 64; Broom's Legal Maxims, 685.

A party cannot claim the aid of a court of equity, who has been guilty of laches: Dickerman v. Burgess, 20 Ill. 266.

As to the notice requisite to postpone a subsequent purchaser's whose deed is of record, to the rights of an unrecorded assignment: 4 Kent's Com. 171; 1 Story's Eq. Jur. § 398; Doyle v. Teas, 4 Scam. 249; Henderson v. Pilgrim, 22 Tex. 464; James v. Johnson, 6 Johns. Ch. 417.

It is immaterial that the notes had not matured at the time of the release: Gregory v. Savage, 32 Conn. 250.

Where a purchaser on examination of the records finds no record of assignment of a mortgage, but does find a record of release of such mortgage, he is warranted in believing that the debt has been paid: Walsh v. Priest, 8 Allen, 165; Warden v. Adams, 15 Mass. 238; Bailey v. Merrick, 50 Me. 172; Orvis v.

Newell, 17 Conn. 96; Bank v. French, 17 Conn. 129; McClue v. Barris, 16 Iowa, 591.

As to delivery of a deed, and that the record is *prima facie* evidence of delivery: Gunnell v. Cockerill, 79 Ill. 79; Lessee of Mitchell v. Ryan, 3 Ohio St. 377; 2 Greenleaf's Ev. § 297; Warren v. Town of Jacksonville, 15 Ill. 236; Rivard v. Walker, 39 Ill. 413; Walker v. Walker, 42 Ill. 311; Crocker v. Loewenthal, 83 Ill. 579; Gunnell v. Cockerill, 84 Ill. 319.

Messrs. DENT & BLACK, for defendant in error; contending that the endorsement and delivery of the notes with the mortgage operated to convey the mortgage to Ogle, cited Vansant v. Allmon, 23 Ill. 30; Olds v. Cummings, 31 Ill. 188; Fryer v. Rockefeller, 63 N. Y. 276; Craft v. Webster, 4 Rawle, 242; Rigney v. Lovejoy, 13 N. H. 247; Wilson v. Kimball, 27 N. H. 300; Lucas v. Harris, 20 Ill. 169.

There was no merger, neither can plaintiff in error assume from a release acknowledged after the giving of the trust deed to the bank, that the mortgage was discharged: Edgerton v. Young, 43 Ill. 464; Goff v. Denny, 2 Phila. 275; Campbell v. Vedder, 42 N. Y. 174; Purdy v. Huntington, 42 N. Y. 334.

After receiving the deed from Allen, Runyan stood in the position of mortgagor to Ogle: Pratt v. Bank of Bennington, 10 Vt. 293.

Even if Runyan had not been trying to release to himself, the release would be open to inquiry: De St. Romes v. Blanc, 20 La. An. 424; Trenton Banking Co. v. Woodruff, 1 Green Ch. 117; Stanley v. Valentine, 79 Ill. 544; Flower v. Elwood, 66 Ill. 438.

The bank should have required full evidence of the payment of the notes: Smith v. Jackson, 10 Chicago Legal News, 49; Brown v. Blydenburgh, 7 N. Y. 141.

No record of the assignment was necessary: Greene v. Warnick, 64 N. Y. 220; Campbell v. Vedder, 42 N. Y. 174.

The release deed was never delivered to Allen, the grantee therein, and hence was ineffectual: Herbert v. Herbert, Breese, 354; Wiggins v. Lusk, 12 Ill. 132.

PLEASANTS, J.   From the record in this case it appears that in August, 1874, Eben F. Runyan, payee and holder of certain notes of Heman R. Allen, dated July 31, 1874, payable in one, two and three years, and secured upon lands in Cook county by mortgage of even date and duly recorded, indorsed said notes for a valuable consideration, and delivered the same with the mortgage, to the defendant in error; that in the spring of 1875, he obtained from the mortgagor a conveyance of the equity of redemption; and that thereupon, before said notes were paid or due, and without the consent or knowledge of Ogle, but upon the strength of his apparent title, which he then made perfect of record by releasing the mortgage, he negotiated a loan of the Fidelity Savings Bank of Chicago, and executed a trust deed of the same premises to secure it.

In regard to his transaction with the bank, it appears more particularly, that he first applied for the loan about the 10th of June, 1875, and had several interviews on the subject with Mr. Haines, the president, in the course of which he constantly represented himself as the owner of the property, and was told that he would need to make out his notes for the amount desired, with a trust deed to secure them, and produce to the attorney of the bank an abstract, brought down to include the trust deed, and if upon examination the title should be found satisfactory he could have the money.

On the 18th of that month, Mr. Tripp, the attorney, prepared the deed to himself as trustee, which Runyan then took away to execute.   When he returned the next day to acknowledge it Tripp noticed in his hands a deed of release of the Allen mortgage.   About the 6th of July he came again, bringing abstracts, which showed the title from Allen as follows: (1), the mortgage from Allen to Runyan, recorded August 1, 1874; (2), the deed from Allen to Runyan, recorded June 19, 1875; (3), the release from Runyan to Allen, recorded July 2, 1875, and (4), the trust deed from Runyan to Tripp, recorded July 2, 1875.   The trust deed bore date the day before that of the release, which was June 19th; but both, together with the deed from Allen to Runyan, were acknowledged on the 19th, and recorded in the order above stated.   It is probable that ·

Turpin v. Ogle.

Runyan himself took or sent all these instruments to the recorder's office.   He assured Tripp that the mortgage was in fact canceled and the property free from incumbrance; and proposed, being a prominent lawyer and operator in real estate, to give his own certificate to the title, which was declined by Tripp, who, after some days occupied in its examination, and in causing to be cured some minor defects which he had pointed out, reported it as satisfactory; whereupon the bank loaned the money and took the trust deed as security.

Default being made in the payment of the Allen notes, Ogle, the assignee, filed his bill to set aside the release and foreclose the mortgage as a first lien.   The Superior Court, upon the pleadings and proofs, decreed accordingly, and Turpin, having become receiver of the bank and been admitted to defend, prosecutes this writ of error.   The question is, who has the prior equity, Ogle or the bank?

Its ultimate decision is regarded as important, not only to the parties, whose interests here at stake are large, but also in its general application as affecting titles to real estate and the security of loans.   We find no clear precedent in any adjudication of our own State, but are of opinion that it must turn upon the effect to be given to the registry acts, and to the comparative diligence or negligence of the parties in acquiring or manifesting their respective interests.   Ogle in good faith paid full value for all that he received, and by the assignment of the notes unquestionably took, as between himself and the assignor, a valid and effectual assignment, in equity, of the mortgage also; so that as to him its subsequent release was a fraud on the part of Runyan.

The bank also, in like good faith, took the trust deed as security for money loaned, not only without notice, actual or constructive, that the mortgage was outstanding, but upon the faith of positive verbal assurances and of proper evidence furnished by the records that it was extinguished.

Was it bound, under the circumstances, to make further inquiry and know at its peril, that it had been assigned, or, on the other hand, was it necessary that Ogle, to protect himself against such a subsequent purchase or incumbrance of the premises, should have his assignment of record?

In the consideration of this question we attach great importance to the release. If the title of the bank was not itself apparently perfect of record, clearly it could claim no protection under the registry acts against an incumbrance or adverse title not necessarily inconsistent with that record. And such, without the release, would have been its condition. For it was well understood long before it was so declared in Edgarton v. Young, 43 Ill. 464, that upon a conveyance by mortgagor to mortgagee the mortgage would not necessarily merge, but might be held to be still subsisting if the intention or interest of the mortgagee, or perhaps his obligation—which in equity might control and conclusively declare his intention—should so require; and that a party claiming through him, without further assurance, must take this risk, so that if it turned out to be subsisting he would not be a purchaser without notice. The reasonableness of the doctrine was the more apparent in that case, where the party so claiming derived his title under proceedings *in invitum*.

He had purchased at an execution sale, and his deed was not from the mortgagee but from the sheriff. The former had not released the mortgage nor done any other act inconsistent with an intention, interest and duty, positively manifested by his previous assignment of it, to keep it alive; which, with a court of equity, is in such cases the controlling consideration. Ætna Life Ins. Co. v. Corn, 89 Ill. 173, and authorities there cited. Exact and complete justice was therefore done, without violence to the record, by allowing the purchaser at the sheriff's sale to take the equity of redemption, and giving effect to the mortgage in the hands of the equitable assignee. So also upon a similar state of facts, in Goff v. Denny, 2 Phila. 275, bottom paging.

And it may be that not even a deed from the mortgagee himself, with covenants against incumbrances, would be deemed, as to his grantee, such a declaration of his intention to extinguish it as would postpone the equitable assignee. Pratt v. The Bank of Bennington, 10 Vt. 293. Although upon this point the authorities seem not to be in harmony. Gregory v. Savage, 32 Conn. 250.

Turpin v. Ogle.

In the case at bar, however, we are not embarrassed by this question. The equity of the bank does not depend upon a merger of the mortgage, as in the cases above referred to, nor upon a questionable implication of intention on the part of the mortgagee to extinguish it, to be found, if at all, in his covenants in the deed of trust. It rests upon a chain of recorded conveyances which includes a specific release of the mortgage, and excludes any assignment of it.

To all appearances the title is straight and absolutely perfect, from Allen the common source, through Runyan, to Tripp the trustee.

The only encumbrance appearing of record was duly discharged by the party in whom alone, according to the records, were the power and right to discharge it. It so appeared, not only from the mortgage, showing him to be the mortgagee, but was confirmed by the subsequent deed to him from the mortgage debtor of the mortgaged premises, indicating that he had been satisfied as the recognized mortgage creditor. This release was a declaration, absolutely conclusive against him, of his intention to extinguish the mortgage interest; and we have seen that his intention, as made to appear, is decisive.

Now, if any effect is to be given to the registry acts, upon what reason can the bank, honestly purchasing upon the faith of his release, thus apparently authorized, be defeated of its title by his prior unrecorded assignment of this same encumbrance, any more than it could be by a prior unrecorded deed from Allen to Ogle?

Upon such a question, of course, the decisions of the courts of other States can be of value to us only so far as they announce general principles, or as the registry acts of those States are analogous to ours.

In Pennsylvania, where it was held that an assignment of a mortgage was not " a conveyance of and concerning land," and therefore not within the provisions of their recording acts, Crofts v. Webster, 4 Rawle, 255; Mott v. Clark, 9 Barr, 405–6; Goff v. Denny, 2 Phila. 275; it was nevertheless said, in a case where the party purchased the land after the registry of the mortgage, and before satisfaction entered: " Had there

been a *bona fide* purchaser of the mortgaged premises *after* the entry of the satisfaction, and without notice of the outstanding notes, or were the circumstances such as led nobody to lean to the conclusion that the mortgage moneys had not been paid, a countervailing equity would have sprung up for the protection of the innocent purchaser." Roberts v. Halsted, 9 Barr, 35.

In Indiana, prior to the act of 1877, there was no law providing for or authorizing the recording of assignments of mortgages. Such a record, if made, would not have been constructive notice of the assignment, and the assignee was not chargeable with negligence in failing to put his assignment on record. McCormick v. Digby, 8 Blackf. 98; Lapping v. Duffy, 47 Ind. 50; Hasselman v. McKornan, 50 Id. 443; Dixon v. Hunter, 57 Id. 278.

But notwithstanding these repeated decisions, in a later case, arising too before the passage of that act, where a mortgagee, having assigned some of the notes secured by it, without the knowledge of the assignee entered on the margin of the record satisfaction as to all, though by mistake and intending to apply it only to those he had retained, the Supreme Court expressly held that the innocent purchasers of the mortgaged premises for value, upon the faith of the record, were entitled to protection as against the assignee of the outstanding notes. Ayers v. Hays, 60 Ind. 452.

It is true that this case has been criticised with apparent disapprobation by the Superior Court of Indianapolis, in Catherwood v. Burrows, Cent. Law J. Vol. 8, No. 17, p. 342; but it was so well considered that a petition for re-hearing was overruled, and we take it, is the higher authority. The soundness of its conclusion would certainly not have been questioned if the law had provided any means by which the assignee could have given notice of his rights and he had neglected to use them.

In New York, it seems, the recording of an assignment of a mortgage is necessary only against a subsequent assignee of the same mortgage. Campbell v. Vedder, 40 N. Y. 3 Keys, 178; Purdy v. Huntington, 42 N. Y. 3 Hand, 338-9; Greene v. Warwick, R. 64 N. Y. 226-7. This results from the

Turpin v. Ogle.

peculiar language of their statute, which provides that " every conveyance of real estate within this State hereafter made, shall be recorded in the office of the clerk of the county where such real estate shall be situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first recorded."

A mortgage is held to be a chattel real, and its assignment " a conveyance of real estate " which may be recorded. Failure to record it makes it void, according to the terms of the statute, only as against a subsequent *bona fide* purchaser of the same real estate, which is held to mean, the same mortgage, not the mortgaged premises or any other interest therein.

We would not presume to say that this is not a sound construction of the act, but it seems to us that the act itself falls short of a sound policy with reference to the security of titles and the rights of innocent purchasers, by leaving it unavoidably hazardous to invest in any real estate which has been subject to a mortgage at any time within the period of the Statute of Limitations, unless indeed, as was decided in Ely v. Scofield, 35 Barb. 330, a release by the party apparently authorized would be a protection. And in an earlier case, in which it was held that under the statute then in force the recording of an assignment was unnecessary for any purpose, and so would not be notice to a subsequent purchaser, it was said "The registry of the original mortgage is notice to him of its existence. If he will deal without asking for the mortgage, or requiring it to be cancelled, he comes without a semblance of equity to demand that the prior *bona fide* assignee shall be postponed to his claim." James v. Morcy, 2 Con. 289. This conclusion, it will be observed, is based upon the fact of notice to him, by the registry, of the existence of the mortgage. If, then, he purchased in good faith upon like notice of its extinction, by the release of the party ostensibly having the power, it would seem he might come and make the demand with some semblance of equity. And does not the construction of the statutes given in Greene v. Warwick, which

protects the equitable assignee against the subsequent purchaser of anything but the same mortgage, presuppose notice to the purchaser, by the registry, of the existence of the mortgage?

In Ohio, where the mortgagee assigned one of the notes, and then, in fraud of the rights of his assignee, entered a release on the margin of the record, after which the mortgagor sold and conveyed the premises to an innocent purchaser for value, it was held as against the latter the assignee could not assert his equitable lien, because he had negligently permitted the mortgagee to retain ostensibly the power to discharge it, and the purchaser had a right to rely upon the record. Executors of Schwartz v. Leist, 13 Ohio St. 419.

The authorities above cited are from States in which, as we infer from the opinions of the courts, the recording acts are less comprehensive than ours in respect either to the instruments to be recorded, or to the creditors and subsequent purchasers whose rights are to be affected by them. By so much more, then, are the decisions there made for the protection of such creditors and purchasers relying upon the record applicable here.

Our statute provides for the acknowledgment and recording of "deeds, mortgages, conveyances, releases, powers of attorney, or other writings of or relating to the sale, conveyance, or other disposition of real estate or any interest therein, whereby the rights of any persons may be affected, in law or in equity," and by another general description, "instruments relating to or affecting the title to real estate;" they construe the term "real estate" as co-extensive in meaning with "lands, tenements and hereditaments," and as embracing all chattels real; they prescribe the county and the particular office in which these instruments are to be recorded, and declare that they shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice, and be adjudged void as to all of such creditors and subsequent purchasers without notice, until the same shall be filed for record. R. S. 1874, Ch. 30, §§ 20, 28, 30, 38; Ch. 115, §§ 1, 9.

Do these provisions apply to assignments of mortgages?

Turpin v. Ogle.

Their evident policy is to facilitate the disposition of real estate, and at the same time to guard the rights of innocent purchasers; to give security to titles by preventing litigation which might otherwise arise out of fraud, accident, difficulty of proof or secret equities; and it is accomplished just in proportion to the completeness of the exhibition required to be made, upon the public records, of interests affecting the title—and of their transfer, equally as if their creation—of the persons in whom they are vested, as well as of what they are.

We are not aware that any State has provided ampler means to this end than our own. Now, without undertaking to define precisely the estate or interest of a mortgagee before entry or condition broken, it is enough to say that it is of as high a nature here as in New York; that in popular understanding and technical meaning it is an interest in land affecting the title, no less in the hands of an assignee than of the mortgagee, and as much considered in contemplation of a purchase or loan as the title of the mortgagor. The statute so regards it in naming " mortgages " among the instruments required to be recorded, as to subsequent purchasers without notice. Manifestly, then, it is against the policy of the statute to allow the same interest, under the same instrument, to be held by a secret assignment so as to prevail even against the recorded release of the assignor and take the property from an innocent purchaser upon the faith of the record. Such a condition of the title is within the mischief intended to be remedied, and upon principle presents no higher claim to favor than other secret equities which may be enforceable as between the parties.

Furthermore, the act in relation to mortgages provides that every mortgagee, his *assignee of record* or other legal representative, shall, upon payment and request by the mortgagor, his heirs, legal representatives or assigns, enter satisfaction upon the margin of the record of the mortgage, or by a separate instrument in such form as to be entitled to record, and prescribes a penalty to be recovered for neglect so to do. R. S. Ch. 95, §§ 8, 9, 10. This specifically recognizes such assignments as within the recording acts, and tends directly and independently to show also the necessity of recording them as against subsequent purchasers without notice.

The legislature plainly intended to secure to every man whose land appeared to be encumbered, the right, upon payment and request, to have the encumbrance discharged, that it should appear to be clear, and so be available for sale, or as security. If the assignment is recorded the mortgagee's obligation to release is devolved upon the assignee. But if it be not recorded, who shall release? Who can release so as thereby to show the title clear, except the mortgagee? Suppose Allen's land, under a mortgage to Runyan, which is released by Ogle, even with a recital that he is the assignee—can Allen sell or borrow upon that record?

We have seen that in New York these assignments are held to be embraced in the general description, "conveyances of real estate." Greene v. Warmnick, *supra*. Our statute uses descriptions still more general. So in other states, whose recording acts do not embrace them in terms, except of like general description and not more comprehensive, they are expressly decided to be thus embraced; and if not recorded, of no avail against subsequent purchasers without notice. The Bank of the State of Indiana v. Anderson, 14 Iowa, 544, the statement of which on page 545 would fully answer for that of the case at bar without a change, except in the names of parties—re-affirmed in McClure v. Burris, 16 Id. 592, and Cornog v. Fuller, 30 Id. 212; Henderson v. Pilgrim, 22 Texas, 464, where the purchaser took his deed from both mortgagor and mortgagee. Gregory v. Savage, 32 Conn. 250, where he took from the mortgagee alone, after conveyance to him by the mortgagor, but without a release. In these cases, as in those previously cited, the courts hold, as clearly as ours, that the transfer of the debt carries, in equity, the mortgage also; and that a subsequent release or conveyance by the mortgagee, without his consent, is fraudulent as to his assignee; but base their decisions upon the negligence of the latter in failing to put on record an assignment, and the right of the purchaser to rely upon the record, under the registry acts, in the absence of clear notice, otherwise received, of the fact of such assignment; which is maintained, especially by the opinions in the 3d Conn. and 14th Iowa, with a force to which we cannot add. See,

also, Bailey v. Myrick, 50 Maine, 179; Welsh v. Priest, 8 Allen, 165; James v. Johnson, 6 John. Ch'y, 417.    The latter case was overruled in James v. Morey, 2 Corr. 246, but for reasons not materially affecting it as authority upon the point here under consideration.

Although the Supreme Court of this State has had no occasion to decide the question directly, yet that its opinion would be against the claim to priority of a secret assignee of a mortgage over a subsequent purchaser relying upon an apparently perfect record, is indicated in Edgerton v. Young, 43 Ill. 460; and in Flower v. Elwood, 66 Id. 444, it was said: "So, the cancellation of a mortgage of record is *prima facie* a satisfaction and discharge, but it may be proved to have been made by accident, mistake or fraud, and the mortgage will remain in force against the mortgagor, if not against innocent purchasers and encumbrances," which we understand to express, in its connection, something more than a doubt in favor of the latter.

It is insisted, however, that in this case the record itself cast such doubt upon the assumed authority of Runyan to release the mortgage as ought to have put the bank upon inquiry.

The facts disclosed and relied on as charging it with notice, are, first, that the notes were not due when the equity of redemption was conveyed to him, nor even when the abstract of title was submitted to its attorney.

We see no reason why the parties to a mortgage given to secure purchase money may not without liability to suspicion, arrange to satisfy it by rescinding the sale, just as well before it is due as after.    This circumstance was distinctly considered, and held to be wholly unimportant in The Executor of Swartz v. Leist, and Gregory v. Savage.    Second and mainly, that the release was made after that conveyance and while the negotiation for a loan was pending.  It is argued that upon the receipt of Allen's deed Runyan occupied the position of mortgagor to the assignee of the mortgage and that his release was made not only for the occasion, in his own interest and without arrangement with Allen, but in effect to himself, and was therefore inoperative.

This proposition may be true as between Ogle and Runyan,

but its attempted application to the bank ignores the registry acts and begs the question of fact—whether it had notice of the assignment, or of law—whether such notice was necessary to defeat its trust deed. The inquiry is, how did it reasonably appear to the bank? Was it bound to know that the mortgage had been assigned, or that the release was not in pursuance of an arrangement in good faith made with Allen? Certainly it was made upon the occasion of his application for the loan, and for the purpose, in part at least, of ensuring its success. But its acknowledgment was simultaneous with that of the deed, which was its apparent consideration. It must have been intended and understood, not as a conveyance, but merely as a formal declaration that the mortgage was extinguished; and in that sense it was not to himself. If the mortgage debt was really satisfied by the surrender of the property, as was to be inferred from the record, and as he stated, then Allen was entitled to it. It was also a proper assurance to be given to the bank, and he appeared to be the proper person to give it. We suppose that applications for loans before the title is per fected, as is well understood by the lender, are of daily occurrence, and that it is enough, in the absence of every other suspicious circumstance, if it be perfected before the money is loaned and the security taken.

Upon the facts appearing and the authorities above cited, we are of the opinion that although the mortgage thus in equity assigned might have been of force and effect as against the trust deed without the release—because in that case the record would not have certainly imported its extinguishment, yet that by means of the release, which was conclusive of it in favor of an innocent subsequent purchaser, the latter did obtain priority over the mortgage so assigned, unless the bank had notice *dehors* the record, of the fact of such assignment. And that is the remaining question.

Here it is to be considered that purchasing upon the faith of a record which disclosed no ground for distrust of the title— a condition which clearly distinguishes this case from that of Smith v. Jackson, 10 Legal News, 49—the bank was not bound to look carefully for it elsewhere or to suspect its existence.

Turpin v. Ogle.

In Wade on the Law of Notice, p. 58, § 109, it is said that "Under the Registry Act for Ireland, in a recent case (referring to Agra Bank v. Barry, L. R. 7, H. L. 135), where the owner of an estate had created an unregistered mortgage upon his estate by the deposit of the title deeds, such equitable mortgage was postponed to a subsequent registered legal mortgage. And it was further held that such legal mortgage could not be successfully assailed upon the ground that the solicitor employed to draw the same accepted a frivolous excuse for the absence of the title deeds, and drew the mortgage from memoranda of the contents of the deeds furnished by the mortgagor. "It was held to be inconsistent with the policy of the Irish registry law, to impose on a mortgagee or purchaser the duty of inquiry with a view to the discovery of previous unregistered interests."

So under our own the purchaser is presumed not to have notice of an unregistered interest. Brown v. Welsh, 18 Ills. 347. The contrary therefore must be proved, and so clearly as to make the inference of fraud irresistible. The notice must be of such a character as to take the place of registry. It must be more than barely sufficient to put him on inquiry. Jackson v. VanValkenberg, 8 Cow. 264, and cases there cited; Doyle v. Teas, 4 Scam. 249; 4 Kent's Comm. 171; 1 Story's Eq. Jr. § 398.

Upon the record, as it stood, the bank was not required to make further inquiry, whether the mortgage notes were in fact paid. This we think is shown by unanswerable reasons in Gregory v. Savage, and The Bank of the State of Indiana v. Anderson, *supra*.

Both Haines and Tripp, the only agents of the bank who took any part in the transaction, say they had no suspicion that these were outstanding; and the only circumstance, apart from the record, which is claimed to have had any tendency to create it, was the proposition of Runyan to give his own certificate to the title.

Having previously sold the property to Allen, he might well assume to be familiar with it, and being also known as a lawyer of fair reputation, this offer to avoid expense, is hardly sufficient to satisfy the rule as to notice above stated.

The case as made to and by the bank, was substantially this: Runyan wanted money, and must give security for it. If his sale had stood he could have hypothecated the notes and mortgage; but Allen, for some reason, probably the general depreciation of values and resulting pecuniary embarrassment, had arranged with him to abandon it. He must, therefore, put up the property itself. His title, however, had not been properly restored of record; but he had the means of restoring it, as was evidenced by his possession of the deed from Allen, duly executed, and he proposed to give his own certificate or that of his firm, to its soundness. This was declined. Its own attorney must pronounce as to that. Allen's deed must be acknowledged and recorded, together with a release of the mortgage. Then, if in the opinion of its attorney there was nothing else to impeach it, his trust deed would be satisfactory. To all this he assented, and thereupon the trust deed was then prepared and dated, to be executed in due time. On the following day, the three instruments were acknowledged, and the deed from Allen recorded; the other two, for some reason not shown, a fortnight later. The abstract was then submitted, and the title being first carefully examined by the attorney of the bank and pronounced good, as indeed it appeared to be, the loan was made upon it. In all this, we see nothing strikingly irregular or unbusiness-like; nothing that impresses us as being calculated to awaken at the time, a suspicion of fraud on the part of Runyan, or to call for greater care than was used on the part of the bank.

It is only in the light of the disastrous event that it assumes an appearance which may be questionable; just as it often happens that a serious ailment, after it is developed, is seen to have been indicated by symptoms at which, when they appeared, ordinary prudence would take no alarm.

But for this event, as between himself and the bank, we think Ogle is responsible. He might easily have taken an instrument suitable for the purpose, and by putting it on record have given to all whom it might concern full notice of his rights. The letter and spirit of the law which had made provision for it, common prudence with reference to his own

interests, and a just regard for the security of others, alike admonished him to pursue this course. His neglect to do so put it in the power of Runyan, by collusion with Allen or imposition upon his confidence, to make the specious show of title on which he obtained, without its fault, the money of the bank. His mortgage therefore should be postponed to its trust deed.

The decree of the Superior Court to the contrary is reversed and the cause remanded, for further proceedings not inconsistent with this opinion.

.            Reversed and remanded.