### WINDLE *v.* BONEBRAKE and others.

*(Circuit Court, D. Kansas.* March 13, 1885.)

**VENDOR AND VENDEE—NEGOTIABLE BOND SECURED BY MORTGAGE—ASSIGNMENT —PAYMENT BY PURCHASER—FRAUDULENT SATISFACTION OF RECORD—FORE-CLOSURE BY ASSIGNEE.**

> B. and wife executed a negotiable bond to S. for $500, payable in five years, at the National Bank of Chester County, Pennsylvania. with interest, payable semi-annually at the same place, for which coupons were attached, and to se-cure payment, executed a mortgage on 160 acres of land in Allen county, Kan-sas. S. recorded the mortgage, and sold and transferred the bond and mortgage to H., who transferred and sold them to W. Immediately after the execution of the bond and mortgage, and before the assignment of the mortgage was re-corded, B. sold and conveyed the land to A. subject to the mortgage, and A. sold and conveyed to L., who sold and conveyed to D. S. S. represented that he was still the owner and holder of the bond and mortgage, and before D. S. accepted a deed from L. he paid S. the amount of the bond, and S. satisfied the mortgage of record. The bond and mortgage were not in the possession of S., nor had he any authority to satisfy the record. W. brought an action to fore-close the mortgage. *Held,* that D. S. took the land subject to the mortgage, and that W. was entitled to foreclose.

In Equity.

*E. A. Barber,* for plaintiff.

*J. H. Richards,* for defendant Sheer.

FOSTER, J. The complainant brings his bill in equity, seeking a decree of foreclosure of a mortgage on real estate. On the twenty-seventh of June, 1879, Isaac Bonebrake and wife executed a nego-tiable bond to one J. W. Stover for $500, payable in five years, at the National Bank of Chester County, Pennsylvania, with interest, payable semi-annually at the same place, and for which coupons were attached; and to secure the same, executed a mortgage on 160 acres of land in Allen county, Kansas. Stover immediately placed the mortgage on record, and then sold and transferred the bond and mort-gage to one David Hurd, who soon thereafter, and on the sixteenth day of August, 1879, sold and transferred them to this plaintiff, who thereby became the *bona fide* holder of the same. Immediately after the execution and delivery of the mortgage, Bonebrake and wife sold and conveyed said real estate to one Boydston, subject to said mort-gage, and who in turn sold the land to one Likes, who, on the eight-eenth day of August, 1879, sold and conveyed it to defendant David Sheer. At the time Sheer bought the property there was no assign-ment of the mortgage on record, and Sheer had no knowledge of the transfer and sale of the bond and mortgage, and Stover falsely repre-

sented to Sheer that he (Stover) was still the owner and holder of the same, and had them in his possession, and that he would release the mortgage of record upon Sheer paying the money to him. Relying upon these representations of Stover, they together went to the office of the register of deeds, and Stover then and there satisfied the mortgage of record, and Sheer paid him the money and took a deed for the land. Stover did not have possession of the bond or mortgage, and had no title or interest in them, nor any authority to satisfy the record. The mortgage recited the debt which it was given to secure, and the time and place of payment, (June 27, 1884, at the National Bank of Chester County, Pennsylvania.) The controversy is now between this plaintiff and David Sheer, as to whether the mortgage is a lien on the land as against Sheer's title. When Sheer began negotiations for the land the records disclosed the existence of the mortgage unsatisfied, the debt not due for several years to come, and payable at a bank in Chester county, Pennsylvania, and a negotiable obligation outstanding for which the mortgage was given to secure. Neither Stover nor any one else told Sheer that the debt had been paid; on the contrary, he was told that the debt was not paid, and in this transaction he undertook to pay it off and get the record clear.

It appears to have become the established doctrine that a mortgage given to secure a debt is but an incident to the debt and partakes of its negotiability. *Carpenter* v. *Longan,* 16 Wall. 271; *Burhans* v. *Hutcheson,* 25 Kan. 626; *Kellogg* v. *Smith,* 26 N. Y. 20; *Keohane* v. *Smith,* 97 Ill. 156. From this rule it would naturally follow that while its negotiable character existed the purchaser would take the security as he does the debt to which it is the incident, free of equities and defenses existing between the original parties. The *bona fide* purchaser, in such case, obtains vested rights to the debt and the security. How far are his rights liable to be divested by reason of the registry laws concerning real estate? Must he put upon the records his assignment of the mortgage, or in default thereof remain in constant danger of the mortgagee, at any time wiping out his security with a stroke of the pen? The statute of this state declares that the recording of an assignment of a mortgage does not of itself impart notice to the mortgagor, so as to invalidate any payment made by him, his heirs or personal representatives, to the mortgagee. Section 3, c. 68, Laws 1879. This statute evidently requires actual notice to the mortgagor of the assignment, to protect the rights of the assignee against payments by the mortgagor to the mortgagee. But the supreme court of Kansas has construed this provision as not applying to mortgages given to secure negotiable paper. *Burhans* v. *Hutcheson,* 25 Kan. 626. In any event, the grantee of the mortgagor is not included in the terms of the statute, and it may well have been intended that a subsequent purchaser of the real estate should be charged with notice of all the record shows at the time of his purchase. Jones, Mortg. § 473; *Belden* v. *Meeker,* 47 N. Y. 307; *Van Keuren* v. *Corkins,* 66 N. Y. 77.

In this case the records showed, at the time of Sheer's purchase, an unsatisfied mortgage to secure a negotiable bond, due more than four years hence, and payable in Chester county, Pennsylvania. He was informed that it was not paid off; but Stover, the mortgagee, falsely represented that he was still the owner of it, and that it was in his possession; and relying upon these statements, and without requiring Stover to produce or surrender the note or mortgage, he paid him the amount of the debt, and had satisfaction entered of record. This transaction occurred on the eighteenth day of August, 1879, and but two days after the plaintiff bought the note and mortgage in Pennsylvania, not sufficient time having elapsed to enable plaintiff to have put his assignment on record; and, as a matter of fact, it was not recorded until July, 1881. This bond being negotiable, and the mortgage of record disclosing that fact, as well as the time and place of payment, it was great carelessness on the part of Sheer not to have required the production of the papers, or some evidence that Stover held the same. *Keohane* v. *Smith,* 97 Ill. 156; *Purdy* v. *Huntington,* 42 N. Y. 334; Jones, Mortg. § 474; *Bank* v. *Anderson,* 14 Iowa, 545. Had Sheer found the record of the mortgage released and satisfied by the mortgagee, and he had no actual notice of the assignment, or that the debt was unpaid, he might well have relied on the record; and in such a case he would take the land free of incumbrance, although the record may have been released by fraud, accident, or mistake, or merger of titles. Jones, Mortg. § 472; *Purdy* v. *Huntington,* 42 N. Y. 334; *Gillig* v. *Maass,* 28 N. Y. 191; *Brown* v. *Blydenburg,* 7 N. Y. 141; *Kellogg* v. *Smith,* 26 N. Y. 18; *Van Keuren* v. *Corkins,* 66 N. Y. 77; *Bank* v. *Anderson,* 14 Iowa, 544; *Vannice* v. *Bergen,* 16 Iowa, 555; *McClure* v. *Burris,* Id. 591; *Cornog* v. *Fuller,* 30 Iowa, 212; *Bowling* v. *Cook,* 39 Iowa, 200; *Baldwin* v. *Sager,* 70 Ill. 505; *Ogle* v. *Turpin,* 102 Ill. 148; *Ayers* v. *Hays,* 60 Ind. 452; *Etzler* v. *Evans,* 61 Ind. 56.

This great array of authorities has been examined and cited by reason of a supposed conflict on this question, and there are some cases, I believe, in Michigan and Wisconsin, and a dissenting opinion in *Bank* v. *Anderson, supra,* giving to a mortgage securing a negotiable debt the same protection in the hands of *bona fide* holders as the note itself. But in reason, as well as by the great weight of authority, I think the doctrine before announced is fully established. At the same time it must be kept in mind that the record which will protect the subsequent purchaser is the record as he *finds* it, and not as he *makes* it, or *procures it to be made.* For instance, take the case of *Cornog* v. *Fuller, supra.* The court say: "When Fuller purchased the land he had no notice that the Hall note was unpaid, and in the possession of plaintiff. He saw upon the records the satisfaction of the mortgage," etc. In the case of *Insurance Co.* v. *Eldredge,* 102 U. S. 545, when the insurance company made its loan the deed of trust to secure the notes held by Eldridge was released.

But the release was procured by the agent of the insurance company, and such record could not avail the company. If this was not the rule it would open wide the door for fraud and carelessness, as a party could take advantage of his own wrongful or careless act. The only case which seems to recognize a different doctrine, I have been able to find, is *Lewis* v. *Kirk*, 28 Kan. 497; and while the correct rule, as an abstract proposition of law, is stated in that case, I think the court overlooked this distinction, or else they took the finding of the court below, that Kirk was a *bona fide purchaser*, as conclusive, notwithstanding the *status* of the record. The case of *Keohane* v. *Smith*, *supra*, is directly in point with the case at bar; as also is the case of *Bent* v. *Stiger*, lately decided by the supreme court of Illinois and not yet reported. The lien of the plaintiff's mortgage must be held superior to Sheer's deed, and a decree entered as prayed in the plaintiff's bills.

BREWER, J., concurring.