RAND, EX'R, v. BARRETT· ET AL.

NOBLE v. THE SAME. (Two cases.)

1. **Promissory Note:** DEPOSIT OF AS COLLATERAL SECURITY: DELIVERY TO THIRD PARTY: PAYMENT OR SALE: FACTS CONSIDERED. The holder of a promissory note indorsed it and deposited it in a bank as collateral security. Afterwards a third party paid to the bank the amount due thereon, and took the note, and after this the makers of the note paid to the third party several installments of interest thereon. *Held* that from these facts a presumption arose that the transaction between the bank and the third party was a sale of the note to him, and not a payment of it by him for the makers.

2. ——: ——: RIGHT OF DEPOSITARY TO SELL. Where the holder of a note indorses it and deposits it in a bank as collateral security, without limiting the authority of the bank in the use which it shall make of it, the bank may make such disposition of it as it may choose, being answerable, of course, to the holder for its value.

3. **Landlord's Lien:** CHATTEL MORTGAGE: QUESTION OF PRIORTY. The lien created by a chattel mortgage made upon the goods used in a hotel before the beginning of a lease of the building is superior to the landlord's lien for rent.

4. **Promissory Note:** PAYMENT BY GUARANTOR: SUBROGATION TO RIGHTS AND SECURITIES OF HOLDER. Where a guarantor of a promissory note paid the same at the request of the makers, whereupon the note was indorsed and delivered to him, *held* that he became subrogated in equity to all the rights of the holder, including the security of a chattel mortgage; and the subsequent cancellation of the mortgage by ·the holder did not deprive him of that security as against the parties to the note, and other parties not prejudiced by the cancellation. And all these rights passed to the guarantor's assignee upon a sale of. the note.

Rand, Ex'r, v. Barrett et al.

5. **Landlord's Lien:** PRIOR CHATTEL MORTGAGE: FRAUDULENT CANCELLATION OF MORTGAGE: CHANGE OF LESSEES: PRIORTY NOT AFFECTED. There was a prior recorded mortgage upon the goods in question, which were claimed under a landlord's lien. After the landlord's lien had attached, the note secured by the mortgage was sold and transferred to a third party, but no assignment of the mortgage was recorded, and the mortgagee fraudulently entered satisfaction of the mortgage on the margin of the record. After this, by an agreement between the landlord and the lessees, a third party was substituted for one of the original lessees under the original lease,—no new lease being made. *Held* that these transactions did not have the effect to make the landlord's lien superior to the lien of the mortgage. *Bank v. Anderson*, 14 Iowa, 544, and other subsequent cases, distinguished.

6. **Execution:** LEVY ON CHATTELS: NOTICE OF INTEREST BY MORTGAGEE: INDEMNIFYING BOND: MONEY JUDGMENT ON. Where an execution is levied on chattels under mortgage, and the mortgagee claims the property, but the execution plaintiffs nevertheless direct the seizure of the property, and give an indemnifying bond, *held* that they cannot defeat a money judgment on the bond in favor of the mortgagee, on the ground that they still have the property, and that the mortgagee might take it under the mortgage.

7. **Practice in Supreme Court:** EVIDENCE TO SUSTAIN FINDING OF COURT. This court cannot disturb the finding of the trial court in a law action, where there was evidence tending to prove every fact necessary to sustain the judgment appealed from.

8. **Interest:** RATE OF: ON JUDGMENT FOR CONVERSION OF MORTGAGED CHATTELS. Chattels mortgaged to secure notes drawing interest at the rate of ten per cent were seized and converted under execution, and the mortgagees obtained judgments on account thereof upon an indemnifying bond given by the execution plaintiffs to the sheriff. The value of the chattels was greater than the mortgaged debt. *Held* that the judgments should draw the same interest as the notes secured by the mortgage.

REED, J., not concurring.

*Appeal from Des Moines Circuit Court.*

THURSDAY, SEPTEMBER 24.

THESE are actions on a bond given by the defendants to the sheriff of Des Moines county, by which they bound themselves to indemnify him against the damages which he might sustain in consequence of the seizure and sale of certain personal property on execution, issued on a judgment in favor of

defendants and against Sweney & Bell, and to pay any claim-
ant of said property any damages which he might sustain in
consequence of such seizure and sale of said property.
Plaintiffs recovered judgments in the circuit court, and
defendants appeal.

*P. Henry Smyth & Son*, for appellants.

*Newman & Blake* and *Hall & Huston*, for appellee.

REED, J.—The three causes were tried together in the cir-
cuit court, and were submitted in this court on one abstract
and argument, and will be disposed of in one opinion. On
the twelfth of November, 1877, the defendants R. A. Barrett
and W. L. Barrett, acting as the agents and trustees of the heirs
of R. A. Barrett, deceased, and J. N. Martin sold to the firm
of Sweney & Bell the furniture and fixtures in a hotel in the
city of Burlington for the price of $7,500. Of this amount
the purchasers paid $3,000 in cash, and they gave their
promissory notes (six in number) for the balance, and to
secure the same they gave a chattel mortgage on the property
purchased. On the same day Sweney & Bell rented of
defendants, for a term of years, the hotel in which said prop-
erty was situated. At the time this lease was entered into,
the firm of Sweney & Bell was composed of H. Sweney and
J. M. Bell, but by a subsequent arrangement the interest of
H. Sweney in the property and business of the firm was taken
by her husband, M. Sweney, and this arrangement was
assented to by defendants. This new firm having made default
in the payment of the rent of the hotel, a suit was instituted
by defendants against them therefor, in which defendants
claimed a landlord's lien on the furniture and fixtures in the
hotel, and an attachment was issued in said suit, and the
property in question was seized thereon by the sheriff. In
that action defendants recovered judgment against Sweney &
Bell for $1,777.09, and an order was entered for the sale of
the attached property. A special execution was issued on

this judgment, and the sheriff was proceeding to sell the property thereunder, when plaintiffs served him with written notice that they claimed the property. He thereupon notified defendants that an indemnifying bond was required, and they accordingly gave the bond on which the actions were brought, and the sheriff proceeded to sell the property under the execution, and defendants bought it in at the sale.

Plaintiff Rand is executor of the estate of John Taylor, deceased. His claim is that one of the promissory notes given by Sweney & Bell in the purchase of the property belongs to said estate. This note is for $1,000, and by its terms it became due on the twelfth of November, 1878. The claim asserted by plaintiff Julia Noble, in the action first instituted by her, is that she is also the owner of one of the notes given by Sweney & Bell in the purchase of said property; said note being for $1,000, and falling due February 12, 1878, and was payable to the order of J. N. Martin.

While they were in possession of the hotel under the lease, Sweney & Bell purchased certain billiard tables, which they placed in the billiard-room in the hotel. For a portion of the purchase price of this property they gave their notes, and, to secure the same, gave a chattel mortgage on said billiard tables. This property was also seized on the attachment issued in the cause instituted by these defendants against Sweney & Bell, and it was sold on the special execution issued on the judgment rendered therein. The claim asserted by plaintiff Julia Noble, in the action last brought by her, is that she is the owner of these notes, and the mortgage given to secure them. Defendants admit the execution of the mortgage, as alleged by plaintiffs, but deny that plaintiffs have any interest therein, or in the property covered thereby, and they aver that the debts secured by said mortgages were paid off and discharged by Sweney & Bell; but that, for the purpose of cheating and defrauding defendants, who were entitled to a landlord's lien on the property covered thereby to secure the rent of said hotel, they procured said mortgage

and notes to be transferred to plaintiff, and that the claims now asserted by plaintiffs thereunder are asserted in fraud of their rights.

The cause in which E. D. Rand, executor, is plaintiff, and the one first instituted by plaintiff Julia Noble, were tried in the circuit court as equitable actions. The other cause was tried as an ordinary action.

I.   As to the action brought by plaintiff E. D. Rand, executor. The evidence establishes that the note which plaintiff claims belongs to the estate of which he is executor was indorsed by defendants, who were the payees thereof, to Theodore Guelich, and was by him indorsed and delivered to the First National Bank of Burlington, as collateral security. At about the time of its maturity, plaintiff's testate paid to the bank the amount then due upon the note, and it was delivered to him, and was found among his papers after his death, which occurred some years afterwards.

1. PROMIS-SORY note: deposit of as collateral se-curity: de-livery to third party: pay-ment or sale: facts consid-ered.

Defendants' claim is that Taylor, in paying the money to the bank, was acting for Sweney & Bell, and that the transaction amounted to a payment and satisfaction of the debt evidenced by the note. But this claim, we think, is not sustained by the evidence. The money which he paid to the bank belonged to Taylor himself, and not to Sweney & Bell. The note was not canceled by the bank when it was delivered to Taylor, and Sweney & Bell made one or two payments of interest on it to him after he received it. Nothing is shown with reference to the transaction between Taylor and the bank except the payment by him of the money, and the delivery by it to him of the note. The presumption arising from these facts, and the subsequent recognition of the note by the makers as a continuing obligation, is that the transaction between Taylor and the bank was a sale of the note by the bank to him. It is true that Mr. Guelich testified that he did not authorize the bank to assign the note to any third

2. ___: ___; party, and that he was informed by the bank

*right of depositary to sell.* soon after the transaction that it had been paid, and had no knowledge, until about the time this suit was instituted, that it was claimed that the bank had sold it. We do not understand him to mean by this, however, that there was an express understanding between him and the bank that the note should not be negotiated; but his meaning doubtless is that he did not, in express terms, authorize it to sell the instrument. But when he indorsed the note and delivered it to the bank as collateral security, he thereby vested it with the title to it, and, unless its rights with reference to the instrument were expressly limited, it had the power to make such disposition of it as it might elect; being answerable to him, of course, for its value. We think it

3. LAND-LORD'S lien: chattel mortgage: question of priority. clear, therefore, that Taylor became the owner of the note; and, as the chattel mortgage given for its security was executed before the contract for the rent of the hotel was entered into, the lien created by it is superior to the lien of the landlord for the security of the rent of the property; and it follows that plaintiff had an interest in the property covered by the mortgage, which was senior to the interest of defendants therein.

II. As to the claim first instituted by Julia Noble. The promissory note which she claims to own, as stated above, was

4. PROMISSORY note: payment by guarantor: subrogation to rights and securities of holder. payable to J. N. Martin. George Sweney, a brother to M. Sweney, was liable thereon as guarantor. At its maturity this note was in the hands of the National State Bank of Burlington. It belonged to Martin, but had been indorsed to the bank for collection. Sweney & Bell being unable to meet it, at their request George Sweney paid the amount due thereon to the bank, and the note was delivered to him, the bank indorsing it "without recourse." Martin thereupon entered on the margin of the chattel mortgage an acknowledgment of the satisfaction of his interest therein. Plaintiff claims to have purchased the note from George Sweney. This

claim is denied by defendants, and this issue presents one of the principal questions of fact which we have to determine in the case. ⸺We will not attempt to set out the evidence bearing on the question, but will content ourselves with a statement of the conclusion to which our examination of the evidence has led us.

After George Sweney had paid the amount of the note to the bank, M. Sweney repaid him the amount and received the note from him. We are satisfied, however, that this payment was made with money belonging to plaintiff, and that M. Sweney acted in the transaction as her agent. Both plaintiff and Sweney swear that the latter acted in that capacity in the transaction, and their testimony on the question is not contradicted. We are also satisfied that the transaction was intended by the parties as a purchase by plaintiff of whatever interest accrued in favor of George Sweney on account of the payment by him of the amount of the debt evidenced by said note. It becomes important, therefore, to determine the character of the right which accrued in his favor on account of such payment. The relation which existed between Sweney & Bell and him was that of principal and surety, and when he paid the debt he was entitled to be subrogated to all the rights of the creditor. He was entitled to have the principal undertaking assigned to him, and to have the benefit of all securities which had been placed in the creditor's hands by the principal debtor. In equity, the payment by him of the amount of the indebtedness is regarded as a purchase of the debt rather than a payment of it; and when the bank assigned the note to him, it did simply what he was entitled to have done by virtue of his relation to the parties and the fact of his having made the payment. See Pomeroy Eq. Jur., § 1419 and authorities cited in the note.

When George Sweney made the payment to the bank, then, and received the assignment of the note, he became the owner of the indebtedness evidenced by it. He also became the equitable owner of the chattel mortgage which was given

for its security, and as against Sweney & Bell he had the right to seize and sell the property covered by it for the satisfaction of the debt, and his rights as against them were in no manner affected by the satisfaction of the mortgage entered on the record by Martin. Plaintiff, by her purchase from him, acquired these rights. As against Sweney & Bell she has the same rights and interests which Martin had before the payment was made by George Sweney to the bank. It is clear, therefore, that her interest in the property covered by the mortgage is superior to the defendants' lien thereon for the rent of said hotel, unless her right is defeated by some equity which does not arise out of her relations to the mortgagors.

It is claimed by defendants that, after the satisfaction of the mortgage was entered of record by Martin, they consented to the substitution of M. Sweney as a party to the lease in place of his wife, who was a member of the firm of Sweney & Bell when the contract was entered into, and that they knew when they consented to this change that Martin had entered satisfaction, and believed when they gave their consent thereto that the debt secured by the mortgage had been paid; and they contend that upon these facts their landlord's lien upon the property for the security of the rent which accrued after M. Sweney became a party to the lease is superior to any claim in favor of plaintiffs under the chattel mortgage; their claim being that the facts of the case bring it within the rule laid down by this court in the following cases: *Bank v. Anderson*, 14 Iowa, 544; *McClure v. Burris*, 16 Id., 591; *Cornog v. Fuller*, 30 Id., 212; *Bowling v. Cook*, 39 Id., 202. It is held in those cases that one who purchases property, after the satisfaction of a mortgage thereon has been entered of record by the mortgagee, takes it discharged of the claims of an assignee of the mortgage, if the assignment was not recorded at the time of the purchase, and he had no actual notice of the rights of the assignee.

5. LANDLORD'S lien: prior chattel mortgage: fraudulent cancellation of mortgage: change of lessees: priority not affected.

We think, however, that the facts of the present case do not bring it within that rule. Defendants, when they consented that M. Sweney might become a party to the lease, in no manner changed their position with reference to the property. They made no new contract for the lease of the hotel. They simply consented that he might become a party to the lease instead of his wife, whose undertakings therein he covenanted to perform; nor did they contract for any additional security for the rents which were yet to accrue under the contract. The law gave them a lien from the beginning of the term of the lease for all the rents which should accure under it; but this lien was junior to that created by the mortgage, and they did not contract for anything in addition to this when they consented to the substitution of M. Sweney as a party to the lease. We think it clear that they did not by that transaction acquire the right which a purchaser of the property would have acquired by a purchase thereof under like circumstances.

III. It is contended by defendants that, as they are still in possession of the property, plaintiffs have the right, if the mortgages are valid liens upon it, to seize it thereon, and sell it in satisfaction of their claims, and that for this reason they are not entitled to money judgments for the value of their interests therein. We think, however, that defendants are not in a position to urge this objection. They directed the seizure of the property on the attachments, and, after plaintiffs gave the sheriff notice that they asserted a claim to it, they gave the indemnifying bond on which the actions are brought, and directed him to sell it in satisfaction of their judgment. They have denied plaintiffs' right to it at every stage of the proceedings, and, although the causes were tried as equitable actions, they have made no offer to return it to plaintiffs in case their right to it should be ultimately established. We think they must be treated as having converted

*6. EXECUTION: levy on chattels: notice of interest by mortgagee: indemnifying bond: money judgment on.*

it entirely to their own use, and that they are liable to plaintiffs for the value of their interest in it.

IV. As to the action last instituted by plaintiff Julia Noble. This action was tried in the circuit court as an ordinary action. The appeal brings up questions of fact only for our determination, and we deem it sufficient to say that there was evidence tending to prove every fact essential to plaintiff's right to recover on the claim asserted in the action, and, under the well settled rule governing in such cases, we cannot disturb the finding of the circuit court.

**7. PRACTICE in supreme court: evidence to sustain finding of court.**

V. The decree in each case provides that the judgment shall bear ten per cent interest, that being the rate of interest which the several notes owned by plaintiffs bear. A majority of the court think that this provision is right. The holding is put upon the ground that, as the condition of the indemnifying bond is that defendants will indemnify the claimants of the property for the damages which they will sustain in consequence of the seizure and sale of the property on their claim, the measure of their liability is the value of the interest of the claimant in the property at the time the damages are paid; which, as the value of the property exceeds the amount of the debts secured by plaintiffs' mortgages, will be the amount of said debts at the time of payment. The writer of this opinion does not concur in this view. In my opinion the measure of plaintiffs' recovery is the value of their interest in the property at the time the property was converted by defendants. The rights which were determined by the judgments are that plaintiffs had liens on the property superior to that of defendants, and that they were entitled to recover for the damages which they had sustained in consequence of the taking and conversion of the property. Their recovery was not on the notes, but for the wrongful conversion of the property, and, under the provision of section 2078 of the Code, their judgments should bear but six per cent interest. I think the

**8. INTEREST: rate of: on judgment for conversion of mortgaged chattels.**

judgments should be modified in this respect, but the major-
ity think otherwise, and they will accordingly be

AFFIRMED.