No. 2115.

## H. R. T. PARKER ET AL. *v.* A. W. BUCKNER ET ALS.

1. SCHOOL VOUCHER—STATUTE CONSTRUED.—Section 1 of the act of April 2, 1883 (see acts of 1883, pp. 41-2), which, among other things, provided that all claims audited as valid under the act of 1879 which had not been paid, might be paid by warrant on the county treasury against the school district owing the claim, was intended to embrace all unpaid claims then audited, whether a levy had been made for their payment or not; and the mode of collection therein provided was designed as a substitute for, and not an addition to, the remedy afforded by previous laws.

2. SAME—STATUTE CONSTRUED.—Section 4 of the same act is not unconstitutional as applicable to claims already audited, and for which a tax had been levied. It applied to the remedy, and neither interfered with a vested right or impaired the obligation of a contract.

3. CASES REVIEWED.—McLane v. Paschal, 62 Texas, 102, and DeCordova v. Galveston, 4 Texas, 470, reviewed.

4. STATUTES CONSTRUED — CONSTITUTIONAL LAW.—Section 4 of the act above referred to is not in conflict with section 36, article 16, of the Constitution.

APPEAL from Rusk. Tried below before the Hon. J. G. Hazlewood.

*J. H. Turner*, for appellants, cited Revised Statutes, 2875; De-Cordova v. City of Galveston, 4 Texas, 470; Acts of 1876, pages 89, 90.

*J. H. Gould*, for appellees, filed an argument directed to a discussion of the statutes, a construction of which was involved.

GAINES, ASSOCIATE JUSTICE.   This action was brought by appellees in the court below to enjoin the collection of a tax levied for the payment of a school voucher for services claimed to have been rendered in 1875.   A preliminary writ of injunction was granted in the case.

The errors assigned are the overruling of a motion to dissolve the injunction and to dismiss the bill for want of equity, the sustaining of the exceptions to a plea of the statute of limitations, and the finding of law by the court that the voucher was barred by limitation.

The petition, in addition to the other necessary averments, alleges that between January, 1875, and April 15, 1875, one Wallis taught a public free school in the school district of which petitioners are tax payers, and that his claim for such services, amounting to three hundred and twenty dollars, was, on the eighth of October, 1879, audited and approved by the auditorial board of the county.   It is also averred that he did not render services as claimed; that the trustees of the district never signed any voucher therefor, and that the voucher presented was forged. It is further alleged that a levy was made in 1880 by the commissioners court, at its February term, for the collection of a tax to pay the claim, and that, at the time of bringing the suit, appellee, Parker, as tax collector, was endeavoring to collect the the same; but that no other levy for that purpose was ever made. It is also specifically alleged that the claim was never presented to the commissioners court, as required by the Act of April 2, 1883.

Appellant Whitesides intervened, setting up that he was the owner of the voucher the collection of which was sought to be enjoined.

The court below (the case having been tried without a jury) found all the facts alleged in the petition established by the evidence except the allegation of forgery.

The decision of one question disposes of all the assignments of error.   The voucher was audited by the auditorial board, and a

levy made by the commissioners court for its payment under the Act of April 22, 1879; but it was never presented to the commissioners court, as required by the Act of April 2, 1883. If the latter Act applies to a claim which has been acted upon in this manner, then this claim is barred.

Section four of the Act in question is as follows: "That all claims such as are mentioned in sections one and two of this Act, which are not presented to the several commissioners courts within six months after this Act goes into effect, shall be forever barred." (Laws Eighteenth Legislature, pp. 41, 42.) The section two referred to applies only to such claims as had never been audited; but section one directs that "the commissioners courts of the several counties in this State are hereby authorized and required in cases where any part of claims audited as valid" under the Act of August 7, 1876, or under the Act of April 22, 1879, "remains unpaid, to cause to be issued in favor of the holder of such claim a warrant upon the county treasurer against the school district owing such claim, for the amount due upon such claim." (Ibid, 41.) The language of this section is general and includes every claim, but upon first glance the idea is suggested that its object is to provide a mode for the collection of those only for the payment of which no levy had been made. But when we recur to the fact that the previous laws contemplated a tax upon the property of the district liable for the claim; and see, further, that the section in question directs a warrant to be drawn upon the county treasurer, payable out of the funds belonging to the school district, it becomes apparent that this was not the only purpose of the provision. It is evidently intended that all indebtedness of this character unpaid at the time of the passage of the Act should be liquidated out of the funds set apart to the school communities respectively. It would seem the object of the legislature was to provide a mode of collection simpler in its operation, less difficult for the claimant to enforce, and less obnoxious to the tax payers themselves. All this indebtedness had accrued previous to August 1, 1876. The long time which had elapsed without a discharge in full of these debts, would seem to have suggested to the legislature that the existing remedies admitted practically of indefinite delay, and that justice to the holders demanded a prompter method of liquidation. These considerations lead inevitably to the conclusion that section one of the Act of 1883 was intended to embrace all

unpaid claims then audited, whether a levy had been made for their payment or not, and that the mode of collection therein provided was designed as a substitute for, and not an addition to, the remedy afforded by the previous laws.

It is contended, however, that if section 4 of the Act of 1883 is to be construed as applying to claims already audited and for the payment of which a tax had been lawfully levied, it is in conflict with the Constitution. But this takes away neither a vested right, nor impairs the obligation of a contract. The claimant was a mere creditor, having a right *in fieri* to collect in the manner pointed out by law a sum of money. He had no vested property in any particular sum of money in fund. That the section in question does not impair the obligation of a contract is equally clear. It is well settled that the legislature may change or modify the remedy for the enforcement of a contract, and within certain bounds limit the time for its exercise. (Treasurer v. Wygall, 46 Texas, 447; DeCordova v. Galveston, 4 Texas, 470.) In McLane v. Paschal, 62 Texas, 102, the court say:

"In case of Edwards v. Kerzey, 6 Otto, 595, the Supreme Court of the United States held that the remedy in a State when and where a contract is made and is to be performed, is a part of its obligation; and any subsequent law of the State which so changes that remedy as substantially to impair and lessen the value of the contract, is forbidden by the Constitution of the United States, and is therefore void."

This is the utmost extent to which the authorities go in this direction. The act in question did not materially impair the remedy, nor did it lessen the value of the contract. On the contrary, we think it afforded a better remedy, and gave ample time in which to secure its benefits. In DeCordova v. Galveston, cited above, the court say, speaking of statutes of limitation: "As forming part of the remedy they may be modified or changed, * * * and statutes abolishing the times of limitation or establishing new terms of prescription are not in violation of the Constitution."

But it is also urged that the section is in conflict with section 36, article 16, of the Constitution, which makes it the duty of the Legislature to provide for the payment by the school districts of debts due by them to the teachers of public schools. We see nothing in this section to restrict the power of the legislature to limit, within reasonable bounds, the time for claimants to avail

themselves of any remedy that might be afforded by law for the collection of these claims.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered November 23, 1886.