McDONNELL v. BURNS et al.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1897.)

No. 894.

1. PROMISSORY NOTE—EFFECT OF INDORSEMENT AND TRANSFER BY COLLECTING BANK.

The indorsement of a note without recourse, after maturity, by a bank to whom it was sent for collection, to one paying full value therefor, but who prior to said transfer was a stranger thereto, is not a payment of the debt, but is a valid transfer of the note with its security.

2. SAME—PRIORITY OF PAYMENT.

When several notes, falling due at different times, are secured by a chattel mortgage, the note first maturing is entitled to priority of payment out of the mortgaged estate.

3. FIXTURES—CHATTEL MORTGAGE ON MACHINERY.

A chattel mortgage covering machinery afterwards placed in a mill is prior to a deed of trust executed after the mortgage, and conveying the mill property, when the grantor, who was also the mortgagor, treated such machinery as personalty, and the trust deed recites that it is subject to the mortgage.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

Charles A. Bishop, Cromwell Bowen, and H. K. White, for appellant.

W. P. Hall and Vinton Pike, for appellees.

Before SANBORN and THAYER, Circuit Judges.

PER CURIAM. This is an appeal from a decree of the circuit court for the foreclosure of a chattel mortgage and a sale of the mort-

gaged property. Upon an examination of the evidence in the record, and the questions of law presented thereby, we are convinced that the statement of facts made by the court below is correct, that its decree is right, and that the reasons for the decision it rendered are as clearly and forcibly expressed in its opinion as we could state them. The statement and opinion of the circuit court are accordingly adopted by this court. They are as follows:

### "Statement of the Case.

"This controversy grows out of the following state of facts: On the 16th day of April, 1891, S. J. Burns & Co., a firm name composed of S. J. Burns alone, bought a lot of machinery from the Des Moines Manufacturing & Supply Company of Iowa for use in a mill at St. Joseph, Mo., at and for the sum of $10,000. for which he executed to said Des Moines Company his three several promissory notes, for $3,333 each, payable in 8, 16, and 24 months, respectively, after date, with interest at 8 per cent. per annum, at the National Bank of St. Joseph, Mo. To secure such notes he executed a chattel mortgage to said Des Moines Company on said machinery, etc., in said mill building. Before the maturity of either of said notes the Des Moines Company, by indorsement in blank, transferred said notes to the complainant, McDonnell. Some time after the execution of said mortgage said Burns executed a second mortgage to Jefferson Hosea, trustee, for the benefit of the defendant the Ayr Lawn Company, which last named deed of trust covered the real estate and building as well as the machinery therein. Upon the maturity of the first of said notes the complainant placed the same in the hands of the People's Savings Bank of Des Moines, Iowa, for collection, which was sent by said last-named bank for collection to the Saxton National Bank of St. Joseph, Mo. It presented the note for payment to the maker, but it was not paid by the maker. Shortly thereafter a representative of the National Bank of St. Joseph appeared at the Saxton Bank, and offered to take up said note on behalf of the said Ayr Lawn Company on condition that the Saxton Bank would transfer to the Ayr Lawn Company said note by indorsement, without recourse, which the latter bank at first hesitated to do; but, the said representative of the National Bank of St. Joseph declining to take the note on any other condition, the cashier of the Saxton Bank, after consultation with its president, accepted the money, and indorsed the note, as cashier for said bank, without recourse. The money thus paid was furnished by the Ayr Lawn Company, and the purchase was made by it on its own account, and the note taken by it as security. The money was thereupon transferred by the Saxton Bank to the Des Moines Bank, and by the latter paid over to the complainant. At or about the time of the maturity of the remaining notes in the hands of the complainant he visited St. Joseph for the purpose of seeing about the collection thereof, when he learned for the first time of the facts and circumstances under which the money was obtained for the first note, and the fact of the transfer by the Saxton Bank to the Ayr Lawn Company; the complainant hitherto being under the impression that the note had been paid by the maker, Burns. Burns having failed to pay said notes after their maturity, the complainant, McDonnell, has brought this bill in equity for the collection of the two notes yet owned by him, and for a foreclosure of said mortgage, and sale of the property to enforce the payment thereof. Prior to this suit the Ayr Lawn Company had foreclosed the deed of trust aforesaid given to it by said Burns, and at the sale thereunder the respondent known as the 'Burns Estate' became the purchaser of the property described in said deed of trust, and received the trustee's deed therefor. The bill claims that the first note in question was in fact, so far as the complainant is concerned, paid off, and that the mortgaged property is discharged from the lien therefor. The defendant the Ayr Lawn Company, on the other hand, claims that it became the purchaser and owner of said first-named note, and that the same is a lien on said property secured by the first-named chattel mortgage, and prays for recognition and enforcement thereof against said property, and that the same be paid first out of the proceeds of the sale under such foreclosure. The defendant Burns estate sets up in its answer the facts aforesaid respecting its

purchase under the second deed of trust, and claims that the machinery, etc., described in the first chattel mortgage, was of the nature of permanent fixtures, appurtenant to the building, the title to which passed under the deed of trust under which it claims.

"Opinion.

"PHILIPS, J.  I do not think this case turns upon the question, as suggested by the learned counsel for complainant, whether or not an agent to whom a note is sent for collection has authority to negotiate and transfer it so as to pass the title thereto as against the owner, the transferee knowing at the time the character in which the agent held it, nor whether the agent on such unauthorized transfer could escape his liability to account therefor to the owner, either for the proceeds or as for the conversion.  It may be conceded that such an agent is without authority, as against the principal, to transfer the title to a third party.  Bank v. Davis, 14 N. J. Eq. 286; Meade v. Brothers, 28 Wis. 689; Rowland v. Slate, 58 Pa. St. 146; Goodfellow v. Landis, 36 Mo. 168; Smith v. Johnson, 71 Mo. 382; Quigley v. Bank, 80 Mo. 289.  But the question presented, under the facts of this case, is whether or not a promissory note secured by a mortgage, and indorsed in blank by the payee, and sent to a bank for collection, which bank accepts the money thereon from a third party to whom it indorsed the note, without recourse, such third party furnishing his own money and taking the note as security therefor, is thereby extinguished as a lien on the mortgaged property.  The evidence does not sustain the broad statement of complainant's counsel, in their brief, that, when the cashier of the collecting bank indorsed and delivered the note to the agent of the Ayr Lawn Company, he advised him of the lack of authority of the collecting bank to so transfer the note, or that he did so at the purchaser's risk, or the like.  The substance of the evidence on this point is given by McAlister, the cashier of the Saxton Bank, as follows:  A representative of the National Bank of St. Joseph called to take up the note, requesting that it be not canceled; that it be transferred without being canceled.  'We at first refused to accept payment that way, and my recollection is that the assistant cashier of the National Bank of St. Joseph, Mr. Enright, insisted that we take the money that way; that was the only way he would pay it.  After consulting with our president, we accepted payment, and transferred the note without recourse.'  When the holder of the note was informed by Enright, who was acting for the Ayr Lawn Company, that he wanted the note indorsed, and would not take it in any other way, to which the collecting bank consented, it was evidence clearly indicating that the transaction was not designed to liquidate the debt, but rather a purpose to hold as a security for the money thus advanced.  The note bore the indorsement in blank of the original payee and of the complainant, McDonnell; and, although McAlister held it for collection through his bank, that was not sufficient, as matter of law, to advise the purchaser that the Saxton Bank would not accept the money save in extinguishment of the debt.  The note did not lose its character as negotiable paper by being past due.  By the very act of indorsement the holder warrants that the note is genuine, and is precisely what it purports to be on its face,—a valid, living debt.  1 Daniel, Neg. Inst. par. 607, p. 700; Bank v. Smiley, 27 Me. 225; Challiss v. McCrum, 22 Kan. 121; Lomax v. Picot, 2 Rand. (Va.) 260.  The law of this case, in my opinion, is settled by the discussion in Dodge v. Trust Co., 93 U. S. 379.  It matters not that that was a case between the holder of the note, who had taken it by purchase from the collecting bank, and the maker of the note.  The court expressly said:  'By law a collecting bank is the agent of the holder of the note, and in no sense the agent of the maker.'  The court further observes that there would be no impropriety in and no objection to 'a transfer to a third person paying the money instead of a technical payment and discharge of the note.  It is to be observed, also, that payment technically can only be made by a party to a bill, or by a stranger supra protest.  Such parties may either pay in satisfaction of the note, or pay and hold as by transfer, leaving it an existing security.  It can therefore make no difference to the holder whether, when taken by a stranger, it is taken and held as upon a transfer or in satisfaction of the instrument.  The negotiability of a bill or note remains after maturity, as before, subject to the equities between the parties.'  The court,

after adverting to the rule of law that an agent to whom a note is sent for collection cannot transfer or pledge the same either in payment of his own debt or for his own benefit, and that such transferee with knowledge, or after maturity, acquires no title as against the true owner, yet, in respect of a third party who takes the note from the collecting agent, the court distinctly says that 'where the intention to continue the existence of the note, and not to cancel it by payment, is made evident, when the money is paid to the collecting agent appointed to receive, and the owner of the note receives the money due to him, the authorities sustain the transaction as a purchase.' In such cases the question is simply one of intention. If the party who furnished the money intends thereby not to satisfy the debt, but to acquire the purchase for himself, and it is transferred to him, the debt is continued, and inures to the benefit of such purchaser. This proposition is broadly asserted and maintained by the supreme court throughout the opinion, and by the citation of numerous authorities. This, too, is the doctrine of the supreme court of this state. Swope v. Leffingwell, 72 Mo. 348. See, also, the following cases: Barney v. Clark, 46 N. H. 514; Wilcoxon v. Logan, 91 N. C. 449; Ramsey v. Daniels, 1 Mackey, 16; Rand v. Barrett, 66 Iowa, 736, 24 N. W. 530; Horton v. Manning, 37 Tex. 23; Brice's Appeal, 95 Pa. St. 150. What right has the complainant thus as against the party thus taking the note, to complain of the transaction? He got the defendant's money, and not that of his debtor. He has not returned the money nor offered to do so. True it is that he may not have the same amount of security for the payment of the two remaining notes in his hands had the first note in fact been paid and discharged by the debtor. But he has not been prejudiced or injured nor misled by any act of the Ayr Lawn Company. He has the same security for the debt to-day that he had when the Ayr Lawn Company purchased the first note. By his own act in placing the note, with the blank indorsement of the payee, in the hands of the bank, without more, he invited the public to take it without knowledge of any restrictions on the power of the bank to transfer it. It does seem to me that in such conjuncture the equities are all in favor of the Ayr Lawn Company. If the complainant has any grievance to complain of in that transaction, it should rather be of the collecting bank, who, it seems from the evidence in the case, did not advise the bank at Des Moines, in transmitting the money, of the circumstances under which it was collected, nor of the fact of the transfer of the note to the Ayr Lawn Company. Had complainant been so advised at the time, and he had been dissatisfied with the arrangement, certainly he could not have complained thereof, as against the Ayr Lawn Company, without first returning the money, nor can he now hold onto the fruits of his agent's transaction while complaining of his departure from instructions.

"The other question raised between the complainant and the Ayr Lawn Company is whether the three notes on a foreclosure sale of the mortgage property shall be paid pro rata out of the proceeds or whether the note of the Ayr Lawn Company shall have priority. Under the rule of this state where the mortgage was given and the property is situated, the note first maturing must be first paid out of the proceeds of the foreclosure sale. New York Security & Trust Co. v. Lombard Inv. Co., 65 Fed. 271, loc. cit.

"The remaining question for decision is whether the respondent Burns estate, under the junior deed of trust, acquired the title to the mortgaged property freed from the asserted lien under the first mortgage. The contention of the Burns estate is that the property in question was an appurtenant so affixed to the freehold that it passed by the deed of trust conveying the latter. This position is not maintainable. In the first place, at the time of executing the mortgages in suit, the mortgagor recognized and treated the property as personalty, and severable from the building. He would therefore be estopped from asserting the contrary. The deed of trust under which the Burns estate claims title recites on its face that 'part of which machinery is subject to a deed of trust or chattel mortgage heretofore made.' The grantee under such a mortgage takes cum onere. This should be so especially in this case, in view of the fact that the second deed described the same property in part as 'fixtures, machinery, and miller's outfit.' Without entering into any discussion of the vexed question of the definitive line where machinery placed in a building becomes a permanent fixture, and where it retains its character as personalty,

or without entering into the distinction between the rights of mortgagor against the mortgagee, and those of lessor against lessee, it is sufficient to say that in a case like the one at bar, where the owner has given a lien upon the specific machinery described as being in a house, and a subsequent mortgagee takes with an affirmation in his grant of the liability of the machinery to a prior mortgage, he ought not to be heard to deny the existence of the burden on the property as against the parties to the first mortgage. And most certainly, where he does undertake to subvert the claim of the senior mortgage on the ground that such machinery is a part of the freehold, the burden should rest upon him to establish clearly the character of the property claimed by him. The only evidence in this case, outside of the description in the deed of trust itself, respecting the manner in which this machinery was placed in the mill, is the mere statement of Burns in his deposition that the 'boilers and machinery were put in like other machinery. The engine was bolted down, and the other machinery attached to the floor. They made an oatmeal mill.' It would not be admissible for the court upon such a statement to determine whether there was permanency in this attachment, or whether it was of such a character as to be separable from the building without injury thereto. This issue is found for the complainant. Decree in accordance with the foregoing opinion."

And upon this opinion the decree below is affirmed, with costs.