**FALLS v. KEY et al.   (No. 11257.)***

(Court of Civil Appeals of Texas. Fort Worth.
Oct. 10, 1925. Rehearing Denied
Nov. 7, 1925.)

**1. Husband and wife ⬠⇒189—Vendor, who conveyed without joining husband, held not entitled to foreclosure of vendor's lien as to entire debt.**

Where plaintiff, married woman, obtained land while separated from husband, prior to 1917 amendment of Vernon's Sayles' Ann. Civ. St. 1914, art. 4621, relating to joinder of husband in conveyance, and disposed of it after amendment without signature of husband, taking vendor's lien note, payable in installments, and purchaser disposed of land to others, who, in turn, disposed of it to defendant, who took subject to vendor's lien, plaintiff, on defendant's refusal to pay installment until husband quitclaimed, was not entitled to judgment for foreclosure of vendor's lien as to entire debt; she not having acquired vested right in procedure necessary to dispose of property without husband's signature required by later statute.

**2. Husband and wife ⬠⇒181—Amendment to statute held remedial.**

Amendment to Vernon's Sayles' Ann. Civ. St. 1914, art. 4621, enacted in 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621), relating to conveyances by married woman without husband's signature, held merely remedial to statute as it existed prior thereto.

**3. Statutes ⬠⇒236—"Remedial statute" defined.**

"Remedial statute" is one which supplies defects, and abridges superfluities in former law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Remedial Statute.]

**4. Statutes ⬠⇒267(1)—Presumption against retrospective construction of statutes not applicable to statutes relating to remedies and procedure.**

Presumption against retrospective construction of statutes as a general rule does not apply to statutes relating merely to remedies and procedure, when it appears Legislature intended to make them retroactive.

**5. Statutes ⬠⇒267(1)—Statute, changing procedure, held not to invalidate steps taken before it goes into effect.**

Statute, which merely provides for changes in mode of procedure, will not invalidate steps taken before it goes into effect, but will apply to all proceedings taken thereafter.

Appeal from District Court, Tarrant County; R. E. L. Ray, Judge.

Suit by Mrs. S. M. Falls against G. W. Key and others. Deeming a judgment in her favor inadequate, plaintiff appeals. Affirmed in part; left undisturbed in part.

M. B. Harris, of Fort Worth, for appellant.
Slay, Simon & Smith and Chas. B. Stewart, all of Fort Worth, for appellees.

BUCK, J.   Plaintiff sued G. W. Key, E. J. Broad, J. C. Verser, U. M. Simon, and her former husband, A. C. Meguiar.   The suit was as to all the defendants, save A. C. Meguiar, one for debt, evidenced by a vendor's lien note, and for a foreclosure of a vendor's lien on a certain tract of land.   She alleged that on July 1, 1920, she sold to defendant Key the land in question, she being intermarried at that time with defendant A. C. Meguiar, and that Key, in part payment for the land, executed and delivered a vendor's lien note for $2,200, dated July 1, 1920, bearing interest at 7 per cent. per annum;   that the note was payable in installments as follows: $440 on January 1, 1922, and $440 on the first of each succeeding January thereafter until the entire principal sum had been paid, the interest being payable annually on the due date of the installments;   that, though at the time of said sale she was intermarried with A. C. Meguiar, she was in fact permanently separated from him;   that the property in question was her separate estate and that her said husband had no interest in said property and claimed none;   that said Key recognized her legal right under the circumstances to make a deed to said land as a feme sole, and was willing to and did accept her warranty deed conveying said property, and did execute said note, retaining a vendor's lien on the same.   She further alleged that the first installment was paid by Key on or about the due date, together with interest on the entire indebtedness, and the second installment, with interest, was paid by defendant Simon, who had purchased said property prior thereto and owned the same at that time;   that defendant Key sold the property to E. J. Broad, and said Broad sold the property to Mrs. Nina Verser, the wife of J. C. Verser, and that the Versers sold the property to Simon.

Meguiar was made a party defendant in order to clear the title.   Plaintiff alleged that, when the third installment became due, Simon failed and refused to pay the same, alleging that he had learned since he purchased said property that the plaintiff was a married woman at the time she conveyed it to defendant Key.   He required her to secure a quitclaim deed from her husband, A. C. Meguiar.   She alleged that it was not necessary for her to do this, and that Key, Broad, the Versers, and Simon were all acquainted with the fact that at the time she conveyed the property she was permanently separated from her husband, and under the circumstances she had the legal right to convey the property as a feme sole.

The defendants Broad and the Versers did not answer, and defendant Key made no de-

fense, though all were duly served. Defendant Meguiar filed a disclaimer, and defendant Simon answered, pleading that he did not know at the time he purchased the property that the plaintiff was a married woman; she having signed the deed as a feme sole, and he believed her to be a widow. He pleaded that on January 1, 1924, when she made demand for the payment of the installment due, together with interest, that he learned that at the time of the conveyance she was a married woman, and that he told her that it would be necessary to get a quitclaim deed from her former husband; that she agreed to do this, he offering to draw up the instrument for her. She said that she preferred to have her own lawyer to draw up the deed and that she would return to him after she had secured the signature of A. C. Meguiar thereto; that she did not do this, but filed suit. He further pleaded the tender of the amount due, together with the accrued interest, and tendered the amount in court.

The court rendered judgment in favor of A. C. Meguiar as to costs, but decreed that all right, title, and interest in and to said land be divested out of defendant Meguiar and vested in defendant Simon, and that the title to the said land be quieted in the said Simon, subject, however, to the payment of the remaining vendor's lien notes, to be paid off and discharged according to their face and tenor as under the contract in the deed from plaintiff. Judgment was rendered against the defendants Key, Broad, and Verser for plaintiff's debt and damages in the sum of $1,630.97, together with all costs of suit as against them. Judgment was rendered against U. M. Simon for the amount of the installment due on January 1, 1924, amounting, with interest, to the sum of $529.40, for which amount the vendor's lien was foreclosed upon the said land. No costs were adjudged against Simon and Meguiar. Plaintiff has appealed.

The trial court has filed findings of fact and conclusions of law, and therein finds that Mrs. S. M. Falls was at the time of the trial a widow; that her name was formerly Mrs. A. C. Meguiar; that she married A. C. Meguiar some time during the year 1915, and was divorced from him on January 9, 1923. He further finds, that, some time in the year 1916, the plaintiff, who was then the wife of A. C. Meguiar, while living separate and apart from her husband, purchased the land in question; that on July 1, 1920, Mrs. Meguiar conveyed the land in question as a feme sole to G. W. Key; and that the defendant Key executed his vendor's lien note for $2,200 as herein described.

The court further finds that the land was conveyed by Key to Broad, and, in turn, to J. C. Verser and wife, and by the Versers to Simon, the last-mentioned deed being dated January 25, 1922, and provided that it was "subject to the remaining installments due on said note"; that Simon purchased said land and relied on the record title as disclosed, and that he paid the annual installment due on the 1st of January, 1923, together with the interest; that Simon was advised on January 1, 1924, that plaintiff was not a single woman, as disclosed by the record in his title, at the time she executed the deed to Key, but learned that at that time she was intermarried with A. C. Meguiar.

The court further finds that, subsequent to the acquiring of the land in question, the plaintiff and her then husband joined in the extension of the vendor's lien note upon the land in question, which the plaintiff assumed at the time she purchased the property, and that plaintiff and her husband executed an oil and gas lease on the premises on May 14, 1919.

The court further finds that the defendant Simon was ready, willing, and able to pay the installment due on the note, together with the annual installment of interest due January 1, 1924, and that on said date he requested the plaintiff to procure from her husband, A. C. Meguiar, a deed quieting title in him; that plaintiff promised the defendant Simon that she would secure from her former husband the deed in question, but that she failed to do so, but instituted this suit and attempted to declare the whole of said note due and to declare for attorney's fees.

The court further finds that the property in question was deeded to Mrs. A. C. Meguiar as her separate estate, and that the vendor's lien note, which Mrs. Meguiar had assumed, was paid by her during coverture; that the plaintiff informed said Key at the time she deeded said property to him that she had separated from Meguiar and that the separation was permanent; that the property was her separate estate, but that she had never been divorced from Meguiar, which facts the court finds to be true. The court further finds that Broad and the Versers assumed the payment of the vendor's lien note, but that Simon took the deed to said property, subject to the vendor's lien.

[1] It will be remembered that the court found that the plaintiff purchased the land in question while living separate and apart from her husband some time during the year 1916. On April 4, 1917, article 4621, Vernon's Civil Statutes, was amended. The act, as it was prior to said time and since 1913, read, in part, as follows:

"During marriage the husband shall have the sole management, control and disposition of his separate property, both real and personal, and the wife shall have the sole management, control and disposition of her separate property, both real and personal; provided, however, the joinder of the husband in the manner now provided by law for conveyance of the separate real estate of the wife shall be necessary to

an incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to a transfer of stocks and bonds belonging to her or of which she may be given control by this act; provided, also, that if the husband shall refuse to join in such incumbrance, or conveyance, or transfer of such property the wife may apply to the district court of the county of her residence, and it shall be the duty of the court, in term time or vacation, upon satisfactory proof that such incumbrance, conveyance or transfer would be advantageous to the interest of the wife, to make an order granting her permission to make such incumbrance, conveyance or transfer without the joinder of her husband, in which event she may incumber, convey or transfer said property without such joinder."

By amendment of April 4, 1917, this additional provision is made:

"Provided, also, that if the husband shall have permanently abandoned his wife, be insane, or shall refuse to join in such incumbrance, conveyance or transfer of such property, the wife may apply to the district court of the county of her residence, and it shall be the duty of the court, in term time or vacation, upon satisfactory proof that such incumbrance, conveyance or transfer would be advantageous to the interest of the wife, to make an order granting her permission to make such incumbrance, conveyance or transfer without the joinder of her husband, in which event she may incumber, convey or transfer said property without such joinder." Vernon's Ann. Civ. St. Supp. 1918, art. 4621.

Appellant's contention is that by a course of judicial interpretation, dating from Wright v. Hays, 10 Tex. 130, 60 Am. Dec. 200, decided in 1853, it has been held in this state that a wife whose husband is insane, or who has been permanently abandoned by her husband, or where the two are permanently separated, may convey and alienate lands belonging to her separate estate, and even lands belonging to the community estate. See Clements v. Ewing, 71 Tex. 370, 9 S. W. 312; Clark v. Wicker (Tex. Civ. App.) 30 S. W. 1114. That by an unbroken line of decisions, such construction of the law vested in plaintiff a right of disposition of her separate estate as a feme sole, and that this was a vested right at the time she acquired the property in 1916, of which the Legislature had no right to deprive her by subsequent legislation. Appellant cites the case of Maynard v. Freeman, County Judge, 60 S. W. 334, in support of her contention. In that case, Maynard had a claim against the county for some glandered horses that had been killed under authority of law, under the law as it was at the time of the filing of the application for a writ of mandamus to compel the county judge to issue to him the warrant, for the animals destroyed, in accordance with the report of the appraisers; such report being all that was necessary to entitle the claimant to payment. After the

filing of the suit, the amended act went into effect, and by the amended act it was provided that claims for animals afflicted with glanders and destroyed by authority of law should be filed with the commissioners' court, instead of with the county judge, and the sum allowed be paid as other claims against the county. Judge Templeton, speaking for the Dallas Court of Civil Appeals, said:

"By the law, as it existed when appellant's rights accrued, the award of the appraisers was final, and he was entitled to an order from the county judge for a warrant for the sum awarded to him. By the law as amended, before the holder of such claim is entitled to any compensation for his property he must present his account to the commissioners' court, and can only obtain a warrant for such amount as may be allowed by that tribunal. This is a radical change, not only of the remedy, but it materially affects the right and substantially lessens the value of the remedy. Parker v. Buckner, 67 Tex. 23, 2 S. W. 746; De Cordova v. City of Galveston, 4 Tex. 470; Railroad Co. v Hecht, 95 U. S. 168, 24 L. Ed. 423; Const. art. 1, § 16. This suit was brought before the amendment went into effect, and the appellant's rights cannot be affected by it, nor the remedy so changed as to destroy or materially lessen its value. Therefore, as the appellant had a vested right to the sum awarded him by the citizen commissioners, he could not be required to present his claim to the commissioners' court for allowance. But the amendment, in so far as it directed the warrant for the payment of such claims to be issued on the order of the commissioners' court instead of on the order of the county judge, is applicable to this case, as it does not affect appellant's right, and furnishes him an efficient remedy. It was the duty of the commissioners' court to direct the county clerk to issue the warrant for the amount of the award, and, upon refusal to do so, appellant was entitled to mandamus to compel the performance of such duty."

[2, 3] Under the circumstances shown in the above case, we agree with the holding. At the time of the suit, Maynard had complied with all the requirements of the law necessary to entitle him to payment of his damages, and it was unreasonable to require him to file his claim with the county commissioners' court, and await their action, before he would be entitled to the payment of his claim. In the instant case, the amendment to article 4621, by the terms of which if a wife, whose husband has permanently abandoned her, or is insane, is required to go before the district court for leave to incumber or convey her property, without being joined by her husband, etc., was in effect some three years before she in fact sold the land. We can see no reason or necessity for according to the wife the right to sell her land by deed in which the husband did not join, and where she did not follow direction which had been provided by a statute more than three years old. The judicial interpretation of the statutes regarding the alienation of the separate prop-

erty of a married woman, or even of community property, by her without being joined by her husband, who has permanently abandoned her, or who is insane, rested entirely on the necessity of the situation, and the injustice of permitting an abandoned wife and her children to suffer for the necessaries of life, by reason of her statutory inability to incumber or sell her separate property, or the community property. Clark v. Wicker et al. (Tex. Civ. App.) 30 S. W. 1114, 1117. The amendment to article 4621, enacted in 1917, was merely remedial to the terms of the statute as it existed prior thereto, by adding the words "if the husband shall have permanently abandoned his wife, be insane," etc., to the act. A remedial statute is one which supplies defects, and abridges superfluities in the former law. Blackstone, I Commentaries, 86; 25 R. C. L. p. 765.

[4] The presumption against the retrospective construction of statutes is founded on the principle that they should not be given such a construction as will make them unconstitutional or unjust, and therefore as a general rule does not apply to statutes that relate merely to remedies and modes of procedure. The Legislature has full control over the mode, times, and manner of prosecuting suits; and whenever, upon consideration of an entire statute relating to these matters, it appears to have been the legislative intent to make it retroactive, it will be given this effect. 36 Cyc. p. 1213, § 2. The retroactive effect has accordingly been given statutes providing a new mode of enforcing claims against the state or county, authorizing the issue of executions and attachments, authorizing the foreclosure of mortgages in certain cases, relating to the enforcement of liens, etc.

[5] In so far as the new statute merely provides for changes in the mode of procedure, it will not invalidate steps taken before it goes into effect, but will apply to all proceedings taken thereafter. 36 Cyc. p. 1216; Texas Midland Ry. Co. v. Southwestern Telegraph & Telephone Co., 24 Tex. Civ. App. 198, 58 S. W. 152. The last-cited decision is by the same court that decided Maynard v. Freeman, County Judge (Tex. Civ. App.) 60 S. W. 334. In that case there was a controversy between the railway company and the telegraph and telephone company over the construction of a telegraph line. Commissioners were appointed, who made their award, from which the railroad company appealed. Pending the appeal, the telegraph company, acting under an act passed subsequently to the award, paid into court sums covering the damages awarded by the commissioners, and executed a sufficient bond, and entered into possession of the property, as provided under the new statute. Prior to the enactment of such statute, plaintiff in condemnation proceedings was not entitled to take possession of the property condemned until there had been a final determination of the proceedings. It was held that the statute of 1899 changed the law as to the remedy only, and was applicable to pending proceedings, and the telegraph company was entitled to possession after compliance therewith. See Walker v. Alexander (Tex. Civ. App.) 212 S. W. 715, 716, 717.

We conclude that the plaintiff below, merely by the fact that she purchased the land in question prior to the amendment of article 4621, in 1917, did not acquire a vested right in the procedure necessary for her to dispose of said land without the signature of her husband some three years later, and believe that the trial court committed no error in failing to give a judgment to the plaintiff for a foreclosure of the vendor's lien as to the entire debt, and that the judgment below should be affirmed in so far as it affects defendants Simon and Meguiar, and it is accordingly ordered. The judgment against defendants Key, Broad, and J. C. Verser, not having been appealed from, and no question being made here as to that portion of the judgment, is left undisturbed.

Affirmed in part; left undisturbed in part.

DUNKLIN, J., not sitting.